SAM v BALARDO

Docket No. 61954. Argued March 6, 1980 (Calendar No. 3).—Decided
    July 13, 1981.

Willie J. Sam brought an action for legal malpractice against
    Marilynn J. Balardo. The Wayne Circuit Court, William Leo
    Cahalan, J., instructed the jury to apply the two-year statute of
    limitations for malpractice after deciding when the plaintiff
    knew of or should have discovered the asserted malpractice.
    The jury returned a verdict of no cause of action. The Court of
    Appeals, T. M. Burns, P.J., and D. C. Riley, J. (M. F. Cavanagh,
    J., dissenting), affirmed (Docket No. 30138). The plaintiff ap-
    peals, asserting that the two-year statute of limitations applies
    only to actions for medical malpractice and that the general
    three-year statute of limitations for actions to recover damages
    for injuries to persons and property should be applied in this
    case.

    In an opinion by Justice Ryan, joined by Chief Justice Cole-
    man and Justices Williams and Fitzgerald, the Supreme Court
    *held:*

    The statutory two-year limitation period applies to actions
    for malpractice against attorneys as well as those against
    physicians. The Court did not decide whether actions against
    other state-licensed professional persons are subject to the two-
    year limitation.

        1. The language of the statute is clear and unambiguous on

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 8, 9, 11, 15] 7 Am Jur 2d (Rev), Attorneys at Law § 219 *et seq.*
    When statute of limitations begins to run upon action against
    attorney for malpractice. 18 ALR3d 978.
[2, 13] 73 Am Jur 2d, Statutes § 194.
[3] 73 Am Jur 2d, Statutes §§ 223-227.
[4] 73 Am Jur 2d, Statutes § 11.
[5] 7 Am Jur 2d (Rev), Attorneys at Law § 197 *et seq.*
[6] 73 Am Jur 2d, Statutes § 198.
[7] 73 Am Jur 2d, Statutes § 203.
[10] 73 Am Jur 2d, Statutes §§ 223-227.
[12, 15] 61 Am Jur 2d (Rev), Physicians, Surgeons, and Other Healers
    § 316 *et seq.*
[14] 73 Am Jur 2d, Statutes §§ 236, 237

its face. Once a statute has been declared to be unambiguous on its face, there is no room for further construction of it; the legislative intent must be gleaned from the clear and explicit words of the statute. The word malpractice, although it is clear and explicit, is nowhere defined in the Revised Judicature Act. The Court decided in 1973 that the Legislature intended that malpractice would be defined according to the common-law definition and thus that only those professions traditionally liable for malpractice would be benefited by the two-year statute of limitations.

2. The Revised Judicature Act does not define malpractice, and reliance on other provisions of the statute which use the term is erroneous. The amendment of the act in 1975 to provide that an action for malpractice may be commenced against certain state-licensed persons in the health professions pertains to the time for accrual of the action and does not define malpractice for purposes of the two-year statute of limitations. Another provision of the Revised Judicature Act cited by the plaintiff concerns the legislative decision that an impostor and a state-licensed professional person should be held to the same standard of care; it does not create a new cause of action against impostors. The Revised Judicature Act is remedial legislation which was designed to set forth laws and a system of procedure for the courts. Because it was addressed to procedural reform, substantive rights and liabilities are not defined by the Revised Judicature Act; the definition of malpractice and liability for it are to be determined by resort to the common law.

3. The Court long ago implicitly recognized a common-law action for legal malpractice. Because actions for legal malpractice were recognized when the Judicature Act of 1915 and the Revised Judicature Act of 1961 were enacted, legal malpractice is included within the two-year definition of malpractice as the word is used in the two-year statute of limitations for malpractice actions. The provisions of the Revised Judicature Act do not purport to create or limit the cause of action for malpractice to something other than was recognized at common law.

4. The plaintiff argues that an earlier decision that nurses, who could not be sued for malpractice at common law, were subject to a three-year statute of limitations for negligence shows that the benefit of the two-year limitation is extended only to those professions listed in the Judicature Act of 1915, physicians, surgeons, and dentists. However, the prior decision applied only to nurses and might well have used less sweeping

language had the Court considered the history of actions for legal malpractice and their place in the revised statutory scheme. The analysis which produced the conclusion that nurses are not subject to the short limitation for malpractice yields different results when applied to attorneys. Unlike nurses, attorneys were and continue to be liable at common law for their malpractice. Like physicians, attorneys are required to exercise independent judgment as to what course of action will best serve their client's interests.

5. The deletion from the two-year statute of limitations of the words "physicians, surgeons or dentists" used in the Judicature Act of 1915 was not merely a change of phrase but was the purposeful removal of language of limitation, and is a clear and specific indication of legislative intent to change substantively the meaning of the statutory provision. The omission of words in the amendment of a statute is presumed to have been intentional; any material change in the language of the act is presumed to reflect a change in legal rights. The statutory period of limitation for malpractice was first enacted in 1905, with language making it applicable to malpractice of physicians, surgeons or dentists which remained through eight subsequent amendments until passage of the Revised Judicature Act in 1961. In the early 1900's, when the provision was first enacted, there were very few actions for malpractice brought against attorneys; medical malpractice actions were far more prevalent. By the middle of the century malpractice actions against attorneys had become more frequent, and their increase logically explains the 1961 legislative action in deleting the limiting language of the former statute. Thus, history supports the presumption that the deletion of the language was intended to effect a change in legal rights.

6. The plaintiff also argues that the provision in the Revised Judicature Act was intended to be simply a compilation of the existing periods of limitation on general tort remedies. The retention of the same periods of limitation for general tort remedies, mentioned in the comment of the committee that drafted the Revised Judicature Act, does not say that the existing periods have been retained for certain groups of persons who may be sued for these torts. Malpractice may be referred to for purposes of the statute of limitations without mention of the potential parties to the action. The plaintiff would have the Court interpret the statutory provision by relying on a comment of the State Bar Joint Committee on Michigan Procedural Revision concerning the source of the

provision to reach a result that is inconsistent with the plain wording of the statute.

7. One final and persuasive reason for holding that the two-year statute applies in this case is that it is consistent with considerations of public policy. An attorney is called upon to make decisions that involve the exercise of independent professional judgment of essentially the same serious quality as those made by a physician. They are deserving of the same protection afforded to physicians, surgeons, and dentists by the statutory two-year limitation period for malpractice actions.

Affirmed.

Justice Moody concurred with the conclusion that actions charging malpractice against attorneys fall within the two-year statute of limitations. The legislative history, particularly the excision of the limiting phrase "physicians, surgeons or dentists", lends substantial force to the conclusion that the Legislature intended to broaden the applicability of the provision. The comment of the committee which drafted the Revised Judicature Act that existing time periods have been used appears to mean only that the limitation period for malpractice remains the same. It does not reflect a legislative intention to define or restrict the type of action that may constitute "malpractice" for purposes of applying the statute of limitations. Because it is clear that attorneys were subject to liability for malpractice at common law, it is unnecessary in this case to construe other sections of the Revised Judicature Act and thus implicitly to decide whether the statute of limitations for malpractice actions applies to actions against members of all state-licensed professions.

Justice Levin, joined by Justice Kavanagh, dissenting, would hold that the Revised Judicature Act did not change the substantive application of the limitation period for malpractice and, therefore, it does not apply to professional persons other than physicians, surgeons, and dentists. The legislative history of the Revised Judicature Act indicates that the change in language from that of the Judicature Act of 1915 was an effort to simplify the statute, as a part of a general and comprehensive revision and consolidation of statutes pertaining to the judiciary, rather than to expand the application of the shorter limitation period for malpractice actions. By extending the benefit of the shorter limitation period to members of the legal profession the Court has departed from its prior construction of the statute, which held that it does not apply to nurses, and has, without an adequate or workable basis for the distinction, granted to lawyers what was withheld from nurses. The deci-

sion of the Court has the effect of rendering uncertain the period of limitation applicable to any given profession until the Court has concluded that an action for the negligent practice of that profession was considered an action for malpractice at common law. Until the Legislature clearly expresses an intent to expand the application of the period of limitation for actions for the negligent practice of other professions by specifying the ones to which it applies—and the ones to which it does not—the two-year period of limitation applies only to the malpractice of physicians, surgeons and dentists.

85 Mich App 20; 270 NW2d 522 (1978) affirmed.

OPINION OF THE COURT

1. LIMITATION OF ACTIONS — ATTORNEY AND CLIENT — MALPRACTICE.

The two-year limitation period for malpractice actions applies to actions against attorneys (MCL 600.5805; MSA 27A.5805).

2. STATUTES — CONSTRUCTION — LEGISLATIVE INTENT.

There is no room for further construction of a statute which has been declared to be unambiguous on its face; the legislative intent must be gleaned from the clear and explicit words of the statute.

3. LIMITATION OF ACTIONS — MALPRACTICE — WORDS AND PHRASES — COMMON LAW.

The word malpractice, as it is used in the statute of limitations, although it is clear and explicit, is nowhere defined in the Revised Judicature Act; the Legislature intended that malpractice would be defined according to the common-law usage at the time of the passage of the statute and that only those professions traditionally liable for malpractice would benefit from the two-year statute of limitations for malpractice actions (MCL 600.5805; MSA 27A.5805).

4. STATUTES — REVISED JUDICATURE ACT — MALPRACTICE.

The provisions of the Revised Judicature Act do not purport to create or limit the cause of action for malpractice to something other than was recognized at common law; the statute is remedial legislation which was addressed to procedural reform for the courts rather than to substantive rights and liabilities (MCL 600.101 et seq.; MSA 27A.101 et seq.).

5. ATTORNEY AND CLIENT — MALPRACTICE.

The common-law definition of malpractice is not limited to the negligent performance of professional duties by a physician or

surgeon; the Supreme Court long ago implicitly recognized a common-law action for legal malpractice.

6. STATUTES — REVISED JUDICATURE ACT — LIMITATION OF ACTIONS — MALPRACTICE.

The deletion in the Revised Judicature Act of the words "physicians, surgeons or dentists" used in the former statute of limitations for malpractice was not merely a change of phrase but was the purposeful removal of language of limitation, and is a clear and specific indication of legislative intent to change substantively the meaning of the statutory provision (MCL 600.5805; MSA 27A.5805).

7. STATUTES — CONSTRUCTION — AMENDMENTS.

The omission of words in the amendment of a statute is presumed to have been intentional; any material change in the language of the act is presumed to reflect a change in legal rights, and as a rule courts look to the circumstances surrounding the enactment to determine if the presumption can be fairly supported.

8. LIMITATION OF ACTIONS — MALPRACTICE — ATTORNEY AND CLIENT — PUBLIC POLICY.

An attorney is called upon to make decisions that involve the exercise of independent professional judgment of essentially the same serious quality as those made by a physician; considerations of public policy, therefore, support a decision that attorneys are deserving of the same protection afforded to physicians, surgeons, and dentists by the statutory two-year limitation period for malpractice actions (MCL 600.5805; MSA 27A.5805).

CONCURRING OPINION BY BLAIR MOODY, JR., J.

See headnotes 1, 5, 6.

9. LIMITATION OF ACTIONS — MALPRACTICE — COMMON LAW — REVISED JUDICATURE ACT.

*Because it is clear that attorneys were subject to liability for malpractice at common law, it is unnecessary in a case for legal malpractice to construe other sections of the Revised Judicature Act and thus implicitly to decide whether the two-year statute of limitations for malpractice actions applies to actions against members of all state-licensed professions (MCL 600.5805; MSA 27A.5805).*

DISSENTING OPINION BY LEVIN, J.

10. WORDS AND PHRASES — MALPRACTICE — COMMON LAW — STATUTES.

*The common law has not developed a clear definition of which actions for the negligent practice of a profession are "malpractice" actions, and no substantive distinction among actions for negligence in the practice of different professions is implied by the use or nonuse of the term in reported decisions and statutes, because nothing has heretofore hinged on whether an action was characterized as a "malpractice" action.*

11. LIMITATION OF ACTIONS — MALPRACTICE — REVISED JUDICATURE ACT — CONSTRUCTION.

*The Supreme Court should not adopt a construction of the two-year statute of limitations for malpractice actions which has the effect of rendering uncertain the period of limitation applicable to any given profession until the Court has concluded that an action for the negligent practice of that profession was considered an action for malpractice at common law because the purpose of the revision of the statutes pertaining to the judiciary and the court rules by the enactment of the Revised Judicature Act was to consolidate, simplify and clarify the jurisprudence of the state, not to create uncertainty (MCL 600.5805; MSA 27A.5805).*

12. LIMITATION OF ACTIONS — MALPRACTICE — PHYSICIANS AND SURGEONS — REVISED JUDICATURE ACT.

*The two-year statute of limitations for malpractice actions applies only to the malpractice of physicians, surgeons and dentists until the Legislature clearly expresses an intent to expand the application of the two-year limitation period by specifying the types of actions for the negligent practice of other professions to which it applies and the ones to which it does not (MCL 600.5805; MSA 27A.5805).*

13. STATUTES — CONSTRUCTION — LEGISLATIVE INTENT.

*The rationale underlying the rule of statutory construction that a court will enforce the plain and unambiguous meaning of a statute is that in doing so the court will be giving effect to the legislative intent.*

14. STATUTES — CONSTRUCTION — AMENDMENTS.

*Amendatory statutes, as a general rule, are presumed to intend a change in the law; but where the change in the language of a provision occurs as part of a general and comprehensive revision and consolidation of statutes into a code the revised language will be presumed to bear the same meaning as the*

*original provisions, unless the intent to make a substantive change has been clearly expressed.*

15. Statutes — Revised Judicature Act — Limitation of Actions — Malpractice.

*The legislative history of the Revised Judicature Act indicates that the deletion of the words "physicians, surgeons or dentists" used in the former statute of limitations for malpractice was an effort to simplify the statute rather than to expand the application of the two-year statute of limitations to actions against attorneys for negligent practice of their profession (MCL 600.5805; MSA 27A.5805).*

*Myron F. Poe* for plaintiff.

*Marilynn J. Balardo, in propria persona.*

Amicus Curiae:

*Eugene D. Mossner* for State Bar of Michigan.

Ryan, J. This Court granted leave to appeal to address the issue, "[W]hether the applicable statute of limitations in actions alleging legal malpractice is two years or three years".

We hold that a legal malpractice suit is subject to the two-year statute of limitations pursuant to MCL 600.5805(3); MSA 27A.5805(3).[1]

I

On July 18, 1973, Willie James Sam filed a complaint in the Third Judicial Circuit Court charging attorney Marilynn J. Balardo with legal malpractice. The complaint alleged that plaintiff had consulted the defendant during March or

[1] The subsections of MCL 600.5805; MSA 27A.5805 have been renumbered by 1978 PA 495. Since there have been no substantive changes made with respect to the subdivisions relevant to this opinion, we will refer to the subdivisions as numbered by 1961 PA 236, which were effective at the time the parties went to trial in this cause.

April, 1970 concerning a lawsuit which had been filed against him in the Detroit Common Pleas Court. Ms. Balardo agreed to represent the plaintiff and filed an answer in his behalf in the matter. Plaintiff claims the defendant then advised him of two adjournments of the date set for trial. On September 10, 1970, a default judgment was entered against plaintiff in Common Pleas Court. He contends that he was not notified of that proceeding.

Plaintiff acknowledged that some time after September, 1970 he contacted the defendant regarding his case and was advised by the defendant that he should pick up all his papers from her office since defendant would no longer represent plaintiff. Defendant contends that a written "release" was executed between the parties on October 13, 1970 which purported to absolve and release defendant from all responsibility with respect to this matter.

Plaintiff alleges that he did not learn of the judgment entered against him until December 23, 1972, at which time he was refused renewal of his motor vehicle operator's license because of the outstanding judgment. He was unsuccessful in attempting to have the default judgment set aside and thereafter instituted the present action.

Defendant filed a motion for accelerated judgment alleging that plaintiff's claim is barred by the running of the two-year statute of limitations. The motion was supported by an affidavit which alleged that the last service defendant rendered for plaintiff was on June 30, 1970 when she had the trial of the Common Pleas action adjourned and that, in any event, her last contact with plaintiff was on October 13, 1970 when plaintiff picked up his papers from defendant and signed a release.

The trial court denied the motion. It ruled that the question of whether plaintiff should have discovered the defendant's alleged malpractice between September 10, 1970 and December 23, 1972 was one of fact for the jury.[2] The jury returned a verdict of no cause of action. Plaintiff appealed, claiming that the three-year statute of limitations controlled.[3] A divided Court of Appeals affirmed, finding that the two-year limitation period contained in MCL 600.5805(3); MSA 27A.5805(3),[4] applies to legal, medical, and other recently created malpractice actions. Judge CAVANAGH dissented.[5] This Court granted plaintiff's application for leave to appeal by an order dated October 1, 1979.

## II

The statutory provisions governing the periods of limitation for tort actions form part of the Revised Judicature Act of 1961. MCL 600.5805; MSA 27A.5805 provided in pertinent part:

---

[2] The trial judge instructed the jury as follows:

"So if you find that the defendant, Marilynn J. Balardo, discontinued serving the plaintiff as an attorney on or prior to October 13, 1970, then you must find in favor of the defendant and return a verdict of no cause for action.

"Or if you find that the plaintiff knew or discovered by the—or by the exercise of reasonable diligence should have known or discovered the asserted malpractice or negligence on or prior to October 13, 1970, then also you must find in favor of the defendant and return a verdict of no cause for action.

"However, if you find that plaintiff neither knew of the alleged negligence or malpractice of the defendant until December 23, 1972, nor in the exercise of reasonable diligence (pausing) should have known or discovered the alleged negligence or malpractice until December 23, 1972, then the two statutes that I've just read to you, in effect as pertaining to limitations of action, do not apply."

[3] MCL 600.5805(7); MSA 27A.5805(7). The relevant subdivision as amended by 1978 PA 495 is MCL 600.5805(8); MSA 27A.5805(8).

[4] The relevant subdivision as amended by 1978 PA 495 is MCL 600.5805(4); MSA 27A.5805(4).

[5] 85 Mich App 20; 270 NW2d 522 (1978).

"No person may bring or maintain ·any action to recover damages for injuries to persons or property unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.

\*   \*   \*

"(3) The period of limitations is 2 years for actions charging malpractice.

\*   \*   \*

"(7) The period of limitations is 3 years for all other actions to recover damages for injuries to persons and property."

Plaintiff argues that the two-year period of limitation applies only to actions charging malpractice against physicians, surgeons and dentists and that a malpractice action brought against an attorney falls within the general three-year period of limitation for recovery of damages for injuries to persons or property.[6]

Defendant, supported by amicus curiae, the State Bar of Michigan, counters that the two-year limitation applies to actions charging malpractice of any member of a state-licensed profession.

In concluding that the period of limitations

---

[6] Plaintiff makes an additional argument before this Court. He alleges that his complaint sets forth a cause of action for ordinary negligence as well as for professional malpractice by defendant attorney. Plaintiff contends it was error for the trial court to instruct the jury that the terms negligence and malpractice are interchangeable, thereby depriving plaintiff of a cause of action for ordinary negligence and the benefit of the three-year period of limitations pursuant to MCL 600.5805(7); MSA 27A.5805(7).

We need·not decide this issue since it is clear from the record that plaintiff's counsel failed to object to the trial court's instructions equating the terms malpractice and negligence. We follow the well-recognized rule that when objections to instructions are not timely made by trial counsel, the matter is not properly before appellate courts. *Goodwin v S A Healy Co,* 383 Mich 300, 305-306; 174 NW2d 755 (1970); *Hunt v Deming,* 375 Mich 581, 584-585; 134 NW2d 662 (1965).

within which an action charging legal malpractice must be brought is two years, we need not and do not decide whether actions against any professional groups, other than attorneys, are subject to the two-year period of limitations.

Judge CAVANAGH, who wrote the dissenting opinion in the Court of Appeals in this case, presented a thorough analysis of the legislative history of MCL 600.5805; MSA 27A.5805:

"The legislative history of malpractice actions also lends some support to the conclusion that the two-year limitations period applies.

"The common law permitted actions for legal malpractice as well as for medical malpractice. The Legislature very early provided that these actions could be initiated by civil arrest on the writ of *capias ad respondendum. The statute of limitations on these actions was six years.*

"These limitation periods were modified by the Judicature Act of 1915. That act provided a three-year period for '[a]ctions to recover damages for injuries to person or property'. 1915 CL 12323(2). A shorter, two-year period was provided for malpractice, but it was limited to the 'malpractice of physicians, surgeons or dentists'. 1915 CL 12323(3).

"These provisions remained unchanged until passage of the Revised Judicature Act in 1961. That act, quoted at the outset of this opinion [see MCL 600.5805(3); MSA 27A.5805(3) quoted above] dropped the language limiting the malpractice statute to physicians, surgeons or dentists. The general three-year statute for injuries to persons or property remained unchanged.

"The act, and parallel court rule revisions, also rewrote the procedures for initiation of malpractice suits. The writ of *capias ad respondendum* was abolished, all suits were to be commenced by filing a complaint, and summons succeeded *capias* as the process to be served on the defendant. The statute authorizing use of *capias* for initiation of a malpractice suit was repealed with abolition of the writ, leaving the common law as the

exclusive source for rights of action for legal and medical malpractice.

"Viewing these several revisions as an interrelated whole, it might reasonably be inferred that the abolition of the special procedures for malpractice suits, and the apparent broadening of the medical malpractice statute of limitations, were parts of a general plan for simplification and consolidation of the laws relating to the malpractice of both professions. This interpretation is strengthened by the simultaneous revision of the statute authorizing malpractice actions against charlatans, which was extended to include actions 'against any person professing or holding himself out to be a member of a state licensed profession'." (Footnotes omitted.) 85 Mich App 20, 25-27; 270 NW2d 522 (1978).

We agree that the legislative history of the provision in question, particularly including the omission of the language of limitation "of physicians, surgeons or dentists" from the two-year limitation period for actions sounding in malpractice, is strong support for the proposition that the two-year limit of MCL 600.5805(3); MSA 27A.5805(3) applies to both medical and legal malpractice.

More importantly, however, settled rules of statutory construction unmistakably confirm the fact that actions charging attorney malpractice are subject to the two-year period of limitation.

In *Jones v Grand Ledge Public Schools*, 349 Mich 1, 9; 84 NW2d 327 (1957), this Court, in quoting Justice COOLEY from the early case of *People ex rel Twitchell v Blodgett*, 13 Mich 127 (1865), reiterated the foremost rule of statutory construction:

" 'There are certain well-settled rules for the construction of statutes, which no court can safely disregard. Where the statute is plain and unambiguous in its

terms, the courts have nothing to do but to obey it. They may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they have ·no right to distort those which are clear and intelligible. The fair and natural import of the terms employed, in view of the subject matter of the law, is what should govern.' "

It is clear that we are dealing with a statute whose language is plain and unambiguous on its face. MCL 600.5805(3); MSA 27A.5805(3) states that actions charging malpractice shall be brought within two years. Undoubtedly relying on that plain language, several Court of Appeals decisions[7] and a legal commentator[8] have concluded that the two-year statutory provision is applicable to actions charging legal malpractice. We reach the same conclusion. Once a statute has been declared unambiguous on its face, there is no room for further construction; legislative intent must be gleaned from the clear and explicit words of the statute.[9]

---

[7] See *Corley v Logan,* 35 Mich App 199, 202; 192 NW2d 319 (1971); *Basic Food Industries, Inc v Travis, Warren, Nayer & Burgoyne,* 60 Mich App 492, 495; 231 NW2d 466 (1975); *Berry v Zisman,* 70 Mich App 376, 378; 245 NW2d 758 (1976). In *Biberstine v Woodworth,* 81 Mich App 705, 707; 265 NW2d 797 (1978), aff'd 406 Mich 275, 276; 278 NW2d 41 (1979), both parties agreed the applicable statute of limitations was two years for legal malpractice.

[8] See Peters, *Legal Malpractice—An Analysis of Michigan Appellate Cases,* 57 MSBJ 367, 369 (1978).

In 73 Am Jur 2d, Statutes, § 163, pp 367-368, it has been stated:

"A construction of a statute acted on generally by the bar of the state for many years is entitled to consideration. Indeed, there are cases in which the meaning publicly given a statute by long professional usage has been presumed to be the true one, and regarded as one which should not be lightly changed."

See *Biberstine v Woodworth, supra.*

[9] This is often referred to as the plain meaning rule. This Court, in *Lansing v Lansing Twp,* 356 Mich 641, 649; 97 NW2d 804 (1959), explained the rule as follows:

"The express wording of the statute in this case does not fall within the above provisions so as to justify judicial interpretation. Certainly

We observe, however, that the word malpractice, as it is used in MCL 600.5805(3); MSA 27A.5805(3), although clear and explicit, is nowhere defined in the Revised Judicature Act. Plaintiff urges this Court to adopt the definition of malpractice used in *Kambas v St Joseph's Mercy Hospital of Detroit,* 389 Mich 249; 205 NW2d 431 (1973). In *Kambas,* the Court held that the two-year period of limitation for malpractice actions did not apply to a suit charging negligence of registered nurses in the performance of their professional duties. Instead, nurses were subject to the three-year limitation period embodied in MCL 600.5805(7); MSA 27A.5805(7). In defining malpractice for purposes of the statute of limitations, this Court relied on an opinion of the Ohio Supreme Court[10] that interpreted a similar malpractice statute of limitations. This Court found that the Legislature intended that malpractice would be defined according to the common-law definition of the term and thus only those groups traditionally liable for malpractice would be benefited by the two-year statute of limitations. Plaintiff contends that the common-law definition of malpractice in this state is negligent performance of a physician or surgeon in his or her professional duties.

Relying on two other provisions of the Revised Judicature Act, MCL 600.5838; MSA 27A.5838, and MCL 600.2912; MSA 27A.2912, amicus submits that malpractice, as it is used in MCL 600.5805(3); MSA 27A.5805(3), applies to any member of a state-licensed profession.

it is plain, unambiguous and not subject to different interpretations by 2 reasonable minds. It is clear, definite, and would be easily understood by even those not trained in the law. The language of this statute, therefore, leaves no room for judicial construction."

See, also, 73 Am Jur 2d, Statutes, § 194, p 392, and 2A Sutherland, Statutory Construction (4th ed), ch 46.

[10] *Richardson v Doe,* 176 Ohio St 370; 199 NE2d 878 (1964).

As indicated, we need not decide at this time whether the malpractice statute of limitations applies to all members of state-licensed professions. However, we agree that the Court was correct in *Kambas, supra,* in its observation that the Revised Judicature Act does not define malpractice.[11] Accordingly, we conclude that reliance on other sections of the Revised Judicature Act for a definition of malpractice for purposes of § 5805(3) is erroneous.

MCL 600.5838; MSA 27A.5838,[12] as it originally appeared in the Revised Judicature Act and at the time of trial in the instant case, was concerned with the time of accrual of malpractice actions brought against members of state-licensed professions. A cause of action for malpractice accrued at the time of the last treatment or service. 1975 PA 142 subsequently amended MCL 600.5838; MSA 27A.5838[13] to provide that a malpractice cause of

[11] *Kambas v St Joseph's Hospital of Detroit,* 389 Mich 249, 253; 205 NW2d 431 (1973).

[12] MCL 600.5838; MSA 27A.5838 provided:

"A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudo-professional capacity as to the matters out of which the claim for malpractice arose."

[13] MCL 600.5838; MSA 27A.5838 as amended by 1975 PA 142 provides:

"(1) A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession, intern, resident, registered nurse, licensed practical nurse, registered physical therapist, clinical laboratory technologist, inhalation therapist, certified registered nurse anesthetist, X-ray technician, hospital, licensed health care facility, employee or agent of a hospital or licensed health care facility who is engaging in or otherwise assisting in medical care and treatment, or any other state licensed health professional, accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudo-professional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

"(2) An action involving a claim based on malpractice may be

action may be commenced against one of the enumerated state-licensed health professionals[14] at the time of last treatment or within six months of discovery of the alleged malpractice. We are convinced that this amendment still pertains to accrual periods and does not define malpractice for purposes of the two-year statute of limitations. This view is fortified by the statement of legislative intent as it is set forth in the Analysis of the Senate Bill by the House of Representatives Analysis Section.[15]

commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A malpractice action which is not commenced within the time prescribed by this subsection is barred."

[14] The majority opinion in the Court of Appeals concluded that the amendment to this section, by providing a cause of action in malpractice against nurses, was a legislative response to this Court's decision in *Kambas, supra.* While that may be so, we are more inclined to the view that this amendment is some evidence of the legislative intent that health care providers subject to liability for malpractice actions be not limited to physicians, surgeons or dentists. More importantly, however, it is clear that the amendment to § 5838 does not address itself to defining malpractice for purposes of the statute of limitations. See fn 15, *infra.*

[15] Section 5838, as amended by 1975 PA 142, was addressed solely at shortening the judicially created period of discovery so as to better enable medical malpractice insurers to determine their potential losses in a given premium year.

Michigan House of Representatives Analysis, Analysis of Senate Bill 227 (June 25, 1975), states in pertinent part:

"Some persons feel that legislation is needed which will place stricter limits on the time during which a malpractice action can be initiated against health care personnel. These persons believe that the current statutes, combined with certain court rulings, have contributed significantly to the high rates currently charged for malpractice insurance.

"Michigan has a 2-year statutory limit for the initiation of malpractice actions, commencing at the time at which the defendant discontinues treating the plaintiff with respect to the matters out of which the claim arises. However, the courts have rules that an action may be commenced within 2 years of the date upon which the plaintiff

Similarly, MCL 600.2912; MSA 27A.2912,[16] does not address itself to a definition of malpractice or identification of who may be sued for malpractice for purposes of the two-year statute of limitation. Instead, it is concerned with legislative decision that the impostor and the duly licensed professional be held to the same standard of care. This was explained by this Court in *Kambas, supra,* 253:

"Section 2912 addresses itself exclusively to the problem of the empiric. This pseudo-professional is subject to suit in malpractice and is to be held to the same standard of care as the licensed professional he misrepresents himself to be.

"That this is the only purpose of § 2912 is clear from the Committee Comment:

" 'The source section pertained only to physicians and surgeons. *Note that the broadening of this section does*

discovers, or in the reasonable exercise of diligence should have discovered, the alleged malpractice, even though this may result in the initiation of an action after the 2-year period following the discontinuance of treatment has elapsed. This rule is sometimes known as the 'discovery rule'.

\* \* \*

"The bill would place some restrictions upon the time period during which an action based on malpractice could be initiated. Currently, as a result of certain court rulings, the 2-year statute of limitations on such actions begins to run either at the time when the defendant discontinues treatment of the plaintiff or when the plaintiff discovers or should have discovered his/her injury. The bill, however, would provide that an action must be initiated either within the 2-year period following the discontinuance of treatment or within 6 months after the discovery of the injury, whichever is later. The bill would therefore make it easier for insurers to determine their potential losses for a given premium year without violating the rights of injured patients who do not discover their injuries until after the period prescribed by the statute of limitations has elapsed."

[16] MCL 600.2912; MSA 27A.2912 provides:

"(1) A civil action for malpractice may be maintained against any person professing or holding himself out to be a member of a state licensed profession. The rules of the common law applicable to actions against members of a state licensed profession, for malpractice, are applicable against any person who holds himself out to be a member of a state licensed profession."

*not create a new cause of action.* Members of state licensed professions are liable for malpractice at common law, as are unlicensed persons. What this section does is hold the unlicensed person to the standard of care to which a member of the state licensed profession would be held, instead of to the standard of care of a layman, to which unlicensed persons are held at present.' (Emphasis added.)"[17]

In our view, there is a reasoned explanation for the fact that the Revised Judicature Act does not define malpractice. The RJA is remedial legislation[18] designed to set forth laws and a system of procedure for our courts.[19] In his treatise, Sutherland explains that a common characteristic of remedial statutes is that they affect procedural rights:

"An examination of the decisions shows that the courts have assumed that the term 'remedial' has a limited meaning which is in two respects: (1) Usually 'remedial' is used in connection with legislation which is not penal or criminal in nature, in that such laws do not impose criminal or other harsh penalties. (2) The term 'remedial' is also often employed to describe legis-

[17] See, also, *Leslie v Mollica,* 236 Mich 610, 612-613; 211 NW 267 (1926).

[18] MCL 600.102; MSA 27A.102 provides:

"This act is remedial in character, and shall be liberally construed to effectuate the intents and purposes thereof."

[19] The title to 1961 PA 236 provides as follows:

"AN ACT to revise and consolidate the statutes, relating to the organization and jurisdiction of the courts of this state; the powers and duties of such courts, and of the judges and other officers thereof; the forms and attributes of civil claims and actions; the time within which civil actions and proceedings may be brought in said courts; pleading, evidence, *practice and procedure in civil actions and proceedings in said courts;* to provide remedies and penalties for the violation of certain provisions of this act; and to repeal all acts and parts of acts inconsistent with, or contravening any of the provisions of this act." (Emphasis supplied.)

See, also, Needham, Revised Judicature Act: Special Proceedings and Appeals (Ann Arbor: Institute of Continuing Legal Education, 1962).

lation which is procedural in nature in that it does not affect substantive rights." 3 Sutherland, Statutory Construction (4th ed), § 60.02, p 31. Accord: *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480, 484-485; 124 NW2d 286 (1963).

Moreover, this Court has previously declared that the RJA is legislation that affects procedural rights:

"We cannot accept the defendants' view. However desirable the stated objectives might be, it is doubted that such was the legislative purpose. The statute in question is the Revised Judicature Act. It was drawn, as defendants point out, by a distinguished committee of lawyers, known as the Joint Committee on Michigan Procedural Revision. The purpose of the act was to effect procedural improvements, not advance social, industrial or commercial policy in substantive areas." *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146, 151; 200 NW2d 70 (1972).

It follows then that since the Revised Judicature Act was addressed to procedural reform, substantive rights, such as the definition of malpractice and who may be sued for malpractice, are not defined by the RJA. Instead, the definition of malpractice and liability therefor are to be determined by resort to the common law.

We disagree with plaintiff's contention that the common-law definition of malpractice in this state is limited to the negligent performance of professional duties by a physician or surgeon. There is authority to the contrary in this jurisdiction. Implicit recognition of a common-law cause of action for legal malpractice may be found in *Dean v Radford,* 141 Mich 36; 104 NW 329 (1905), and *In the Matter of Mills, an Attorney,* 1 Mich 392

(1850).[20] Thus, although legal malpractice actions were far less prevalent at common law than medical malpractice actions, this Court long ago recognized a common-law cause of action for legal malpractice. Following the rule that words employed by the Legislature derive their meaning from the common-law usage at the time of the passage of the act, *Allison v Smith,* 16 Mich 405, 433 (1868); *Equitable Trust Co v Milton Realty Co,* 261 Mich 571, 575; 246 NW2d 500 (1933), since actions alleging legal malpractice were recognized at the time of the enactment of the Judicature Act of 1915 and at the time of the Revised Judicature Act of 1961, it follows that a cause of action sounding in legal malpractice is encompassed within the definition of malpractice as used in MCL 600.5805(3); MSA 27A.5805(3). Stated syllogistically, since all malpractice actions are subject to a two-year statute of limitation and a legal malpractice action is a malpractice action, it follows that a legal malpractice action is subject to a two-year statute of limitation.

This conclusion is consistent with the committee comment to § 2912[21] which states that the liability

---

[20] As Judge CAVANAGH in his dissent below said:

"The word 'malpractice' has long been used to describe an attorney's misfeasance or nonfeasance of professional duty. This was ordinary usage at common law. See *National Savings Bank v Ward,* 100 US 195, 198; 25 L Ed 621, 622 (1879). Our statutes have likewise long employed this term (see, *e.g.,* 1857 CL 4016 ['Any Attorney, Solicitor or Counsellor, may be removed or suspended, who shall be guilty of any deceit, malpractice, crime or misdemeanor * * *']), as have the decisions of our Supreme Court. See *In the Matter of Mills, an Attorney,* 1 Mich 392, 393-394 (1850)." 85 Mich App 24, fn 1.

[21] See 33 MCLA, § 600.2912, Committee Comment, p 659, which states the following:

"The source section pertained only to physicians and surgeons. Note that *the broadening of this section does not create a new cause of action. Members of state licensed professions are liable for malpractice at common law,* as are unlicensed persons. What this section does is to hold the unlicensed person to the standard of care to which a member of the state licensed profession would be held, instead of to

for malpractice of members of state-licensed professions[22] is to be determined by resort to the common law. Accordingly, the provisions of the RJA do not purport to create or limit the cause of action of malpractice to something other than what was recognized at common law.

This Court followed the same analytical approach in *Kambas, supra,* by utilizing the common-law definition of malpractice to determine if nurses could be sued for malpractice and therefore be subject to a two-year period of limitation. The plaintiff argues, however, that since this Court found that nurses could not be sued for malpractice at common law and were thus subject to the three-year period of limitations, *Kambas*[23] is authority for the proposition that the Legislature intended to extend the benefit of the two-year malpractice period of limitation only to those professions encompassed in the Judicature Act of 1915, to wit, physicians, surgeons and dentists. We refer plaintiff to Judge CAVANAGH's response[24] to

the standard of care of a layman, to which unlicensed persons are held at present." (Emphasis supplied.)

[22] Attorneys may properly be considered members of a state-licensed profession. See MCL 600.901; MSA 27A.901 and State Bar Rule 2 and 3(a).

[23] Plaintiff relies on the following language from *Kambas:*

"The defendant's suggestion that the action of the Legislature in enacting §§ 2912 and 5838, using the words 'a member of a state licensed profession,' indicated an intent to extend the benefit of the short malpractice limitation of § 5805 to additional professions other than those originally encompassed by the Judicature Act of 1915 is unfounded." 389 Mich 254.

[24] "Plaintiff cites this language [see fn 23 *supra]* as establishing that legal malpractice, which was not within the purview of the 1915 malpractice statute, is likewise outside its successor. There are, however, several reasons to question plaintiff's reading of *Kambas.*

"First, the issue before the Court in *Kambas* was whether the statute applied to nurses, not whether it applied to attorneys. Therefore the quoted language cannot be taken as a holding that attorneys are without the statute. Although the Court did address itself to legislative history and the purpose behind the Judicature Act's revisions, it might well have used less sweeping language had it consid-

this argument in his opinion below to which response we subscribe. Moreover, the approach taken by the *Kambas* Court is entirely consistent with the approach taken herein. By looking to the common law, the Court found that nurses could not be sued for malpractice at common law and were thus subject to a three-year negligence period of limitation. In contrast, we find that attorneys were and continue to be liable for their malpractice at common law and thus are subject to the two-year malpractice period of limitation.

By examining the clear and explicit language of MCL 600.5805(3); MSA 27A.5805(3), to wit, "actions charging malpractice", to determine the legislative intent and meaning of those words, we conclude that legal malpractice is encompassed within the term malpractice as it is used in MCL 600.5805(3); MSA 27A.5805(3).

## III

While we think there is no need to look beyond the plain meaning of the language of MCL 600.5805(3); MSA 27A.5805(3) to warrant the conclusion we reach,[25] because the plaintiff's argument

ered the history of legal malpractice actions and their place in the revised statutory scheme.

"Second, the *Kambas* analysis which produced the conclusion that nurses are not covered by the short malpractice statute yields a different result when applied to attorneys. *Unlike nurses, attorneys were and continue to be liable at common law for their malpractice.* Like physicians, attorneys are required to exercise independent judgment as to what course of action will best serve their clients' interests.

"Finally, Ohio, whose approach to the *Kambas* issue our Supreme Court found so 'persuasively appropriate', applies its short malpractice statute to actions against attorneys. *Galloway v Hood,* 69 Ohio App 278; 43 NE2d 631 (1941)." (Emphasis supplied.) 85 Mich App 28-29.

[25] In *Lansing v Lansing Twp, supra,* 649, this Court said:

"A statute is not open to construction as a matter of course, but

rests so heavily upon interpretation and construction of the statute in question and in view of the precedent-making character of our decision, we turn now to construe the statute in question, employing familiar extrinsic aids.

A

Plaintiff contends that since the Revised Judicature Act is merely a general revision of the Judicature Act of 1915, this Court should observe the rule of statutory construction that declares that where statutes are revised, a mere change in phraseology, or the addition or omission of words, does not operate to change the meaning of the revised statute unless there is a clear and unmistakable intent by the Legislature to make a change. Applying this rule, plaintiff argues that since there is no clear expression of intent to vary the meaning, § 5805(3) of the RJA should have the same meaning as its predecessor, the Judicature Act of 1915,[26] that provided that actions "for malpractice of physicians, surgeons or dentists" shall be brought within two years. He argues that although § 5805(3) states that "[t]he period of limitations is two years for actions charging malpractice", it should have the same meaning as the Judicature Act and therefore the two-year period only applies to malpractice actions brought against physicians, surgeons or dentists. Plaintiff submits

only where the language used in the statute requires interpretation—where it is ambiguous or where 2 or more constructions can be placed upon it, where it is of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning. 'A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself, and any attempt to make it clearer is a vain labor and tends only to obscurity.' 50 Am Jur, Statutes, § 225, p 207."

[26] 1915 PA 314.

that in contrast to § 5805, two instances of specific legislative intent to broaden the definition of malpractice may be found in § 5838 and § 2912 which were amended to include language incorporating the term state-licensed professional.

Amicus counters that the 1961 legislative revision of the Judicature Act removing the words, "physicians, surgeons, or dentists" from the present statute manifested an intent to change and broaden the definition of malpractice. Amicus cites authority for the proposition that when the Legislature amends a statute, and particularly when it does so with a comprehensive amendment, there is a presumption of an intent to change the law.

We cannot agree with plaintiff's argument.[27] We

---

[27] Plaintiff relies on two cases that concern rules of construction with respect to revised statutes. Plaintiff cites *State ex rel Johnson v Broderick,* 75 ND 340, 368-369; 27 NW2d 849, 864 (1947), for the following rule of construction:

" 'A mere change of phraseology, or punctuation, or the addition or omission of words in the revision or codification of statutes, does not necessarily change the operation or effect thereof, and will not be deemed to do so unless the intent to make such change is clear and unmistakable. Usually a revision of statutes simply iterates the former declaration of legislative will. No presumption arises from changes of this character that the revisers or the legislature in adopting the revision intended to change the existing law; but the presumption is to the contrary, unless an intent to change it clearly appears.' 59 CJ, pp 894, 895."

A comparison between the former statute and the later revision in *Broderick* reveals only minor phraseology and punctuation changes in the latter. The revision is thus consistent with the above cited rule of statutory construction.

Similarly, in *United States v Thompson,* 319 F2d 665 (CA 2, 1963), the court held the change in wording from "trial of any criminal action" to "criminal proceeding" did not effect a change in meaning where the reviser's notes expressly stated that any changes other than those specifically mentioned were only changes in phraseology.

We refer plaintiff to the title of 1961 PA 236, fn 19 *supra,* which includes an express repeal of all acts inconsistent with the RJA. See, also, *People v Gould,* 345 Ill 288, 312; 178 NE 133, 144 (1931), wherein the court stated the following:

"A revision of the law on any subject is a re-statement of the law on that subject in a correlated or improved form, which is intended as a substitute for the law as previously stated and displaces and repeals

find that the deletion of the words "physicians, surgeons or dentists" was the purposeful removal from the statute of language of limitation and is a clear and specific indication of legislative intent to change substantively the meaning of MCL 600.5805(3); MSA 27A.5805(3).[28]

73 Am Jur 2d, Statutes, § 237, p 418, states:

"The omission of a word in the amendment of a statute will be assumed to have been intentional. Where it is apparent that substantive portions of a statute have been omitted by process of amendment, the courts have no express or implied authority to supply omissions that are material and substantive, because that would in effect be the enactment of substantive law."[29]

---

the former laws relating to the same subject and within the purview of the revising statute. It implies a re-examination of the law, and where a later statute covers the whole subject matter of a previous statute or previous statutes and embraces new provisions which plainly show that it was intended as a substitute for the first, the later statute will operate as a repeal of the former statute or statutes even though not in all respects repugnant to them."

[28] We view the omission of the words "physicians, surgeons or dentists" as removing words that would otherwise limit the scope of the common-law definition of malpractice. It is erroneous to assume that the omission of three nouns from the statute thereafter broadens the definition of malpractice to encompass every conceivable state-licensed profession. Instead, the actions of the Legislature in omitting the words "physicians, surgeons or dentists" evidences an intent to extend the benefit of the two-year malpractice statute of limitations to those groups that could otherwise be sued for malpractice at common law. This conclusion is supported by the fact that the RJA is a statute affecting procedural rights; substantive rights are determined by the common law. *Connelly v Paul Ruddy's Co, supra.* See, also, *Equitable Trust Co v Milton Realty Co, supra,* wherein the Court stated:

"In *People v Covelesky,* 217 Mich 90, 100 [185 NW 770 (1921)], it was said:

" 'A well-recognized rule for construction of statutes is that when words are adopted having a settled, definite, and well-known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is plainly shown.' "

[29] Revisions are encompassed within the broad terms, amendatory acts or amendments. See 1A Sutherland, Statutory Construction (4th

This is consistent with the rule of statutory construction stated in 1A Sutherland, Statutory Construction (4th ed), § 22.30, p 178, that "any material change in the language of the original act is presumed to indicate a change in legal rights".[30] As a rule, courts look to the circumstances surrounding the enactment to determine if the presumption can be fairly supported. 1A Sutherland, *supra,* p 179. It is our view that the circumstances surrounding the enactment of § 5805(3) of the Revised Judicature Act further buttress the conclusion that the omission was intentional and reflects a change in legal rights. .

The malpractice period of limitations was first enacted in a statute entitled "Of the limitations of

ed), § 22.01, p 105. Therefore, all references to amendments are equally applicable to revisions.

This Court has said the following with respect to omissions:

"The provision not re-enacted was the only one in the entire act which authorized and fixed a primary election of city officers in Grand Rapids. It is not the province of the court to inquire why the legislature struck such provision out of the law. It is the province of the court to construe the legislative enactment. There is now no provision in this law for holding such primaries." *Ellis v Boer,* 150 Mich 452, 455; 114 NW 239 (1907).

"The legislature has not seen fit to require the making of a report setting forth specifically the findings of fact on which the conclusion is based. *We may not read into the law a requirement that the law-making body has seen fit to omit."* (Emphasis supplied.) *In re Hurd-Marvin Drain,* 331 Mich 504, 509; 50 NW2d 143 (1951).

[30] In *Colonial Pipeline Co v Clayton,* 275 NC 215, 227; 166 SE2d 671, 679-680 (1969), the court said the following with respect to an amended statute that added two words:

"The fact that the legislature amended the definition of 'cost price' in 1967 to list cash discounts among the items not to be deducted when calculating actual cost is, nothing else appearing, a strong indication that the General Assembly considered such discounts deductible prior to the amendment. In case of an isolated, independent amendment to the tax law, as here, the presumption that a change in substance—not a clarification—was intended is fairly strong."

Similarly, the amendment omitting three words from the instant statutory provision fairly raises a presumption of a change in substance.

personal actions" in 1905.[31] As originally enacted, it provided that "all actions against physicians, surgeons and dentists for malpractice shall be commenced within two years". The language, "physicians, surgeons and dentists", which limited the class of defendants who were protected by the short two-year limitation period remained through eight subsequent amendments[32] until the passage of the Revised Judicature Act in 1961. At that time, the Legislature saw fit to omit this language, thereby making all actions that sound in malpractice subject to a two-year bar. In light of the long history during which this language remained unchanged,[33] we regard this deletion in the RJA as an intentional effort by the Legislature to effect a change in legal rights.

Moreover, there is a reasoned explanation for the 1961 omission of the language, "physicians, surgeons or dentists" from the malpractice statute of limitations that further supports the position that this change was intentional.

In the early 1900's, when the malpractice period of limitations was first enacted, there were some, albeit very few, malpractice actions brought against attorneys. Medical malpractice actions were far more prevalent, which explains the protection given to physicians, surgeons and dentists in the early statutes of limitations. In most recent times, however, attorneys have fared less well in eluding the net of malpractice liability. By the middle of this century, malpractice actions against attorneys became more frequent. The increased

[31] 1905 PA 168.

[32] See 34 MCLA, § 600.5805, Historical Note, p 822.

[33] A minor change was made in 1915. "[P]hysicians, surgeons and dentists" was amended to read "physicians, surgeons or dentists". 1915 PA 314, ch 9, § 13. We attach no significance to what was manifestly a stylistic, nonsubstantive amendment.

number of malpractice actions against attorneys and other groups in more recent times logically explains the 1961 legislative action in deleting the language, "physicians, surgeons or dentists" from the malpractice statute of limitations. Thus, the historic circumstances surrounding the enactment of MCL 600.5805(3); MSA 27A.5805(3) strongly support the presumption that the omission was a material change in the language reflecting the legislative intent to effect a change in legal rights.

### B

Plaintiff, relying on the dissenting opinion in *Kambas v St Joseph's Mercy Hospital,* 33 Mich App 127; 189 NW2d 879 (1971), points to the committee note for § 5805, written by the Joint Committee on Michigan Procedural Revision which drafted the RJA, as expressing the true intent of the Legislature in drafting this section:

"Section 5805 is a compilation of the limitations on the *general tort remedies.* Existing time periods have been used."[34] (Emphasis supplied.)

Plaintiff argues that § 5805 was simply a compilation of the existing periods of limitation from the Judicature Act of 1915. Since the Judicature Act provided a two-year period of limitation for malpractice of "physicians, surgeons or dentists", and a three-year period for malpractice actions against others, malpractice as it is used in § 5805 of the RJA means malpractice of physicians, surgeons or dentists.

We do not agree with this interpretation of the committee comment. The committee comment fo-

---

[34] 34 MCLA, § 600.5805, Committee Comment, p 822.

cuses on the general tort remedies. Of the nine[35] torts enumerated in § 5805 of the RJA, all have retained the same period of limitation as may be found in the source sections.[36] Thus the limitation periods under the RJA for actions charging, for example, assault, battery or malpractice, have not changed from the former statute and continue to be two years. The committee comment is not directed at the status of the parties; it does not say that existing time periods have been retained for certain groups of persons who may be sued for these general tort remedies. The general tort remedy sounding in malpractice may be referred to categorically and apart from the potential parties for purposes of stating the applicable period of limitations.[37] Thus, we find the committee comment, as an expression of legislative intent, quite consistent with the position that the Legislature intended to alter the meaning of § 5805(3) by omitting the words "physicians, surgeons or dentists" from the malpractice statute of limitations.

We note in passing an excerpt from the Michigan State Bar Joint Committee on Michigan Procedural Revision—Final Report, Part I, Committee Report and Recommendations (1960), p 19:

"After the draft of each [statute] in this report is a

[35] We count the tort actions against sheriffs and constables as each being one cause of action.

[36] The source section is 1948 CL 609.13 for all actions except those which may be brought against constables, which is 1948 CL 41.81.

[37] See Needham, Revised Judicature Act: Special Proceedings and Appeals (ICLE, 1962), § 13.410, p 557, wherein the author lists periods of limitation for various remedies, including malpractice. We note no indication that members of the medical profession are to be subject to a different period of limitation than are members of the legal profession.

"Malpractice: 2 years, RJA § [5805(3)]; accrues on discontinuance of treatment or service as to matters out of which claim arose, RJA § 5838."

statement by the committee pointing [out its source and] significance. However, *the language of each of the [statutes] must be examined to determine its meaning and effect.* The following is a brief description of some of the changes that will be of value to litigants." (Emphasis supplied.)

Plaintiff would have this Court interpret the committee comment and the statutory provision in question to reach a result that is inconsistent with the plain wording of the statutory language.[38] We decline to follow that course.

## C

One final and persuasive reason for finding that the two-year period of limitation applies to malpractice actions brought against attorneys as well as against physicians is that it is consistent with considerations of public policy.

"Considerations having to do with public policy exert a significant influence in the process of statutory interpretation since the tendency of the courts has always been to favor interpretations which are consistent with public policy." 2A Sutherland, *supra,* § 56.01, p 401.

An attorney is called upon by his or her profession to make decisions that involve the exercise of independent professional judgment of essentially the same serious quality as those made by a physician, albeit involving a different expertise. *Cf.*

---

[38] 73 Am Jur 2d, Statutes, § 330, pp 474-475, states the following:

"The announced object or report of a legislative commission appointed for the purpose of investigating the laws generally, or the laws on a specified subject, and of recommending any desirable changes, may be taken into consideration for the purpose of determining the meaning of statutes submitted by them to, and adopted by, the legislature. *Such report, however, is not controlling, and the rule does not prevail where the language used in the statute is clear and unambiguous:"* (Emphasis supplied.)

*Kambas, supra,* 389 Mich 255-256. In our view, attorneys are deserving of the same protection afforded physicians, surgeons and dentists by the two-year malpractice period of limitations embodied in MCL 600.5805(3); MSA 27A.5805(3).

Affirmed.

COLEMAN, C.J., and WILLIAMS and FITZGERALD, JJ., concurred with RYAN, J.

BLAIR MOODY, JR., J. *(concurring).* I concur with much of the analysis employed and the conclusion reached in Justice RYAN's opinion that actions charging malpractice against attorneys fall within the two-year malpractice statute of limitation. MCL 600.5805(3); MSA 27A.5805(3).

The legislative history, particularly the excision of the limiting phrase "physicians, surgeons or dentists" from the two-year malpractice statute of limitation, lends substantial force to the conclusion that the Legislature intended to broaden the applicability of this provision. The fact that the committee comment to § 5805 states, "[e]xisting time periods have been used", appears to mean only that the malpractice limitation period remains the same. This comment does not reflect a legislative intention to define or restrict the type of action that may constitute "malpractice" for purposes of applying the malpractice statute of limitation.

The only issue presented for resolution in the instant case is whether actions charging malpractice against attorneys fall within the malpractice limitation period. It is a majority's understanding that the Legislature intended to broaden the class of malpractice actions subject to § 5805(3) beyond malpractice actions against physicians, surgeons or dentists. At the time the Revised Judicature Act

was enacted and at the present time, attorneys were and are subject to liability for malpractice under the common law. In *addition,* attorneys are professionals who must be licensed[1] as one prerequisite to practicing their profession.

Since it is clear that attorneys were and are subject to liability for malpractice at common law it is therefore unnecessary in this case to conclusively construe the effect of other sections of the RJA, particularly MCL 600.2912; MSA 27A.2912 and MCL 600.5838; MSA 27A.5838, and thus implicitly decide whether the malpractice statute of limitation applies to actions against members of *all* state-licensed professions. Further consideration of § 2912 and § 5838 may be helpful in future cases in ascertaining the Legislature's intent concerning the scope of § 5805(3) and its application to actions against members of other state-licensed professions. Accordingly, I would affirm the judgment of the Court of Appeals.

LEVIN, J. This case presents the question whether an action alleging legal malpractice is governed by the two-year period of limitation "for actions charging malpractice", MCL 600.5805(3); MSA 27A.5805(3), or by the general three-year period of limitation "for all other actions to recover damages for injuries to persons and property". MCL 600.5805(7); MSA 27A.5805(7).

The Judicature Act of 1915 expressly limited the shorter malpractice period of limitation to actions charging "malpractice of physicians, surgeons or dentists". 1915 PA 314. As part of the general revision and consolidation which culminated in the Revised Judicature Act of 1961, the language of this provision was changed to state, "[t]he period

---

[1] See, *e.g.,* MCL 600.901 *et seq.;* MSA 27A.901 *et seq.*

of limitations is 2 years for actions charging malpractice".

The revisors who drafted the act explained in their comments to § 5805, of which this provision is a part, that "[s]ection 5805 is a compilation of the limitations on the general tort remedies. *Existing time periods have been used*".

The question whether the omission of the "physicians, surgeons or dentists" language was intended to expand the applicability of the shorter malpractice period to other actions alleging malpractice was before this Court in *Kambas v St Joseph's Mercy Hospital of Detroit,* 389 Mich 249, 253-254; 205 NW2d 431 (1973). In *Kambas,* the Court concluded that the revision had not expanded the application of the malpractice limitation to nurses, and, thus, that actions alleging malpractice of registered nurses were subject to the general three-year period of limitation rather than the two-year period for malpractice. The Court said:

"If it had been the intent of the Legislature to broaden the malpractice limitation, clearly they should have set forth a definition of malpractice."

The Court also said, in apparent recognition of the revisors' comment to § 5805:

"Section 5805 is nothing more than a compilation of existing limitations with no change in time periods."

Although the majority in the instant case maintains otherwise, it appears inescapable to me that by broadening the malpractice limitation to include actions charging legal malpractice the Court has departed from the construction of § 5805(3) indicated in *Kambas* and has, without an adequate

or workable basis for distinction, granted to law-
yers what was withheld from nurses. Having ex-
tended the benefit of the shorter malpractice limi-
tation period to members of the legal profession, it
will be difficult to explain a refusal to extend it to
other professions.

I dissent not only because I continue to be
persuaded[1] that the legislative history of the Re-
vised Judicature Act of 1961 indicates that the
change in language was an effort to simplify the
statute rather than to expand the application of
the shorter malpractice limitation period, but also
because of the uncertainty created by the construc-
tion adopted by the majority in place of the con-
struction indicated in *Kambas.* I would hold that
the Revised Judicature Act of 1961 did not change
the substantive application of the malpractice pe-
riod of limitation and therefore, as in *Kambas,*
that it does not apply to professionals other than
physicians, surgeons and dentists.

I

The majority concludes that the applicability of
the malpractice limitation is to be determined
according to whether an action for the negligence
of a professional was considered a "malpractice"
action by the common law. This means, in effect,
that the applicability of the two-year or three-year
limitation period will henceforth depend on
whether statutes or reported cases can be found
which characterize an action for negligence in the
conduct of the profession involved as a "malprac-
tice" action. This construction gives talismanic
significance to whether the term "malpractice"
was used in prior reported decisions and statutes

[1] *Kambas v St Joseph's Mercy Hospital of Detroit,* 33 Mich App
127, 132; 189 NW2d 879 (1971) (LEVIN, J., dissenting).

to describe an action for the negligence of a professional. No substantive distinction among such actions is implied by the use of the term; to apply the malpractice limitation period to a given profession according to whether an action against a member of that profession was called a "malpractice" action in a judicial opinion before 1961 gives controlling significance to terminology rather than to substance.

Indeed, since the use of the term before today implied no substantive distinction among actions for negligence in the practice of different professions, whether the term was used in an old case or statute may have turned on no more than the writing style of the author. At least it may be said that, since lawyers will now need to research only words, not concepts, preparation for argument on the applicability of the malpractice limitation period to a particular profession has been simplified to a battle between Lexis operators.

The majority's construction has the effect of rendering uncertain the period of limitation applicable to any given profession. After today, only members of the legal and medical professions (including nurses) can know with confidence which period applies until a court, and probably not until this Court, has searched reported decisions, treatises and statutes relating to actions for the negligent practice of that profession to ascertain whether the word "malpractice" has been used with regard to it with sufficient frequency for the Court to conclude that such an action was considered a "malpractice" action at common law.

The majority's construction may also result in the application of the malpractice limitation period far beyond what could reasonably have been intended by the Legislature. Even a cursory review

of case law reveals that "malpractice" has been used to refer to the improper professional conduct of such varied professionals as embalmers and funeral directors,[2] barbers,[3] veterinarians,[4] optometrists,[5] and, in the context of "malpractice in office", county commissioners[6] and even judges.[7]

Moreover, while the Court states that it does not now decide whether actions against professionals other than attorneys are subject to the two-year malpractice limitation period, the Court provides no indication of a rationale for limiting the application of its construction. If, in the course of the profession-by-profession assessment by the courts of whether actions for the negligent practice of the profession were denominated "malpractice" actions in the common law, a generic common-law definition of malpractice is evolved (see Black's Law Dictionary [4th ed], p 1111: "[malpractice is a]ny professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct"), it will be difficult to distinguish on a principled basis between physicians and lawyers, on the one hand, and such professionals as accountants, chiropractors, psychologists and architects, on the other. (In this connection we note that this Court has said: "[T]he responsibility of an architect does not differ from that of a lawyer or physician." *Bayne v Everham,* 197 Mich 181, 199-200; 163 NW 1002 [1917]).

---

[2] *Boydston v State,* 277 P2d 138 (Okla, 1954).

[3] *Turner v Bennett,* 108 SW2d 967 (Tex Civ App, 1937).

[4] *In the Matter of the Suspension or Revocation of the License of Raymond Kerlin, DVM,* 151 NJ Super 179; 376 A2d 939 (1977).

[5] *Kime v Aetna Casualty & Surety Co,* 66 Ohio App 277; 33 NE2d 1008 (1940).

[6] *Cargile v State,* 194 Ga 20; 20 SE2d 416 (1942).

[7] *In re Inquiry Concerning a Judge No 53, Linwood T Peoples,* 296 NC 109; 250 SE2d 890 (1978).

If there is a difference between malpractice actions and ordinary negligence actions it is that, since the former involves negligence in the practice of a profession, the applicable standard of care is that of a reasonable member of the profession rather than of a reasonable layman. If the Court's construction has the effect of extending the malpractice limitation period to all professionals of whom a higher standard of care is required, then it will be difficult to explain why the Revised Judicature Act of 1961 did not extend the malpractice limitation period to all state-licensed professionals.[8]

If the shorter malpractice limitation period applies to all state-licensed professions, then it applies not only to physicians and lawyers but also, for example, to taxidermists, foresters, surveyors, contractors, landscape architects and community planners. If that is to be the course of adjudication of § 5805(3), *Kambas* should be openly overruled. Otherwise, nothing will be left of the *Kambas* decision save that nurses, alone among state-licensed professionals, will be denied the benefit of the shorter malpractice limitation period.

Perhaps the Court is of the opinion that case-by-case adjudication of whether actions for the negligent practice of various professions were known by the common law as "malpractice" actions will eventually produce a reasonable limitation of its construction. It is contrary to the purposes of the

[8] The act expanded the coverage of MCL 600.2912; MSA 27A.2912, which holds a pseudo-professional to the standard of care required of the profession to which he pretends, beyond physicians and surgeons to all state-licensed professions, indicating that the practice of all state-licensed professions requires a higher standard of care than is required of laymen. As the committee comment to § 2912 notes:

"What this section does is hold the unlicensed person to the standard of care to which a member of the state licensed profession would be held, instead of to the standard of care of a layman, to which unlicensed persons are held at present."

Revised Judicature Act of 1961, however, to create even such temporary disarray in the jurisprudence of the state. The purpose of the revision was to consolidate, simplify and clarify, not to create uncertainty.

I would adhere to the construction of § 5805(3) indicated in *Kambas*. Until the Legislature clearly expresses an intent to expand the application of the malpractice limitation period by specifying the types of "malpractice" to which it applies—and those to which it does not—that limitation applies only to the malpractice of physicians, surgeons and dentists.

## II

The majority states that "[i]t is clear that we are dealing with a statute whose language is plain and unambiguous on its face", and that "[o]nce a statute has been declared unambiguous on its face, there is no room for further construction; legislative intent must be gleaned from the clear and explicit words of the statute". Thus, it is argued, there is no need to consider the legislative history of the act or other extrinsic aids to construction to ascertain the intended meaning of § 5805(3).

While it may be clear that the general meaning of malpractice is negligent or otherwise wrongful conduct in the practice of a profession, it should be evident from the preceding discussion that it is signally unclear whether the term "malpractice" was used in § 5805(3) to refer only to such negligent practice by the medical profession (which, especially in the late 1950's when the Revised Judicature Act was being drafted, had been and continues to be the most common meaning of the term), or to the malpractice of only physicians and lawyers, or to the malpractice of physicians, law-

yers and other state-licensed professionals (except nurses), or to the malpractice of members of any profession to which a standard of care higher than that of a layman is applied (except nurses).

This is the second case taken by this Court within the last ten years solely to resolve the meaning of this "plain and unambiguous" term.

The majority concludes that the term "malpractice" was intended to have the meaning given it by the common law. Such a construction does not rely exclusively on a facially clear meaning of the statute but, rather, uses the common law as an extrinsic aid in the construction of the term. Aside from the question of whether any aspect of the common law is clear and unambiguous, it is evident that the common law has not developed a clear definition of which actions for the negligent practice of a profession are "malpractice" actions. Given that an action is one for the negligent practice of a profession and thus that the applicable standard of care is that of a reasonable member of the profession rather than that of a reasonable layman,[9] the reason for the lack of definition is that nothing has heretofore hinged on whether an action was characterized as a "malpractice" action. It is thus not only unclear whether a particular negligence action is a "malpractice" action at common law, but it is also unclear whether the common law has ever addressed the question.

A court whose responsibility in applying statutes

---

[9] If the use of the "malpractice" label has signified no more than the applicability of the higher standard of care due from members of a profession, then actions against all professionals subject to a higher standard of care would have to be considered "malpractice" actions. Such a construction would not only result in a very broad extension in the applicability of the malpractice period of limitation, but would also be plainly inconsistent with *Kambas,* since nurses are subject to such a higher standard of care.

is to discern and effectuate the legislative intent
may not justifiably ignore competent indicia of
that intent. While it has been said that a court
will enforce the plain and unambiguous meaning
of a statute, the rationale underlying this state-
ment is that in doing so the court will be giving
effect to the legislative intent. The linguistic mean-
ing apparent on the face of a statute will be given
effect unless other indicia of legislative intent
demonstrate with even greater clarity that a con-
trary meaning was intended. For a court to use
the blinders of a self-imposed rule of statutory
construction to shut out such indicia is to abdicate
the court's responsibility to implement the legisla-
tive purpose.

## III

The majority concludes that "the deletion of the
words 'physicians, surgeons or dentists' was the
purposeful removal from the statute of language of
limitation and is a clear and specific indication of
legislative intent to change substantively the
meaning of MCL 600.5805(3); MSA 27A.5805(3)."

To be sure, had such a deletion occurred in the
context of a specific amendment of the section and
in the absence of evidence of a contrary intent,
that would be a strong and perhaps conclusive
argument. As a general rule, amendatory statutes
are presumed to intend a change in the law,
although even this general rule must be qualified
in recognition that some amendments attempt
only to clarify the original intent of the statute.[10]

Where the change in the language of a provi-
sion, however, occurs not in the context of a
specific amendment but as part of a general and

---

[10] *Detroit Edison Co v Janosz,* 350 Mich 606; 87 NW2d 126 (1957).

comprehensive revision and consolidation of stat-
utes into a code, as is the case here, the presump-
tion is otherwise. The United States Supreme
Court has said of linguistic and arrangement
changes in the 1948 revision of the federal judicial
code: " 'it will not be inferred that Congress, in
revising and consolidating the laws, intended to
change their effect unless such intention is clearly
expressed.' " *Fourco Glass Co v Transmirra Prod-
ucts Corp,* 353 US 222, 227; 77 S Ct 787; 1 L Ed 2d
786 (1957), quoting *Anderson v Pacific Coast
Steamship Co,* 225 US 187, 199; 32 S Ct 626; 56 L
Ed 1047 (1912).[11] See, also, *Muniz v Hoffman,* 422
US 454; 95 S Ct 2178; 45 L Ed 2d 319 (1975)
(revision of criminal code); *Tidewater Oil Co v
United States,* 409 US 151; 93 S Ct 408; 34 L Ed 2d
375 (1972) (revision of judicial code); *United States
v Ryder,* 110 US 729; 4 S Ct 196; 28 L Ed 308
(1884).

The difference in treatment of changes occurring
in the context of general revisions and changes
occasioned by specific amendments has been gener-
ally recognized:

"The presumption that obtains in the case of an
amendment of a statute, that a departure from the law
formerly existing is intended, has little, if any, force in
the case of a general revision or codification of the laws
of a state. Indeed, it is a settled rule of construction
that where the entire legislation affecting a particular
subject matter has undergone revision and consolida-
tion by codification, the revised sections will be pre-

---

[11] In finding that the 1948 revisions did not substantively alter the
law at issue in *Fourco,* the Court also relied on the expressions in
both the Senate and House reports that the revisors' notes explained
all changes, that the notes did not express any substantive change,
and that "several of those having importantly to do with the revision
say no change is to be presumed unless clearly expressed". *Fourco
Glass Co v Transmirra Products Corp,* 353 US 222, 227-228; 77 S Ct
787; 1 L Ed 2d 786 (1957).

sumed to bear the same meaning as the original sections, and this is true notwithstanding that there is an alteration in phraseology or an omission or addition of words, for in such case the new language may properly be attributed to a desire to condense and simplify the law or to improve the phraseology." 73 Am Jur 2d, Statutes, § 325, p 472 (footnotes omitted).

This principle has been applied to find that a change through a statutory revision from "as provided in this act [article]" to "as provided in sections 76-403, 76-405 and 76-411" did not change the applicability of the altered provision to other sections of the act. *In re Estate of James,* 192 Neb 614; 223 NW2d 481 (1974). It has been applied to find that a change in a provision that had barred arbitration in a controversy where "one of the parties * * * is an infant" to bar arbitration in a controversy "involving an infant" was not intended to change the law so as to bar arbitration of a dispute over child support and maintenance. *Schneider v Schneider,* 17 NY2d 123; 269 NYS2d 107; 216 NE2d 318 (1966). It has been applied to find that the deletion of the phrase "of the Treasury" from a provision that a statute of limitations commenced running from the "statement of account * * * by the accounting officers [of the Treasury]" was not intended to make the statute commence running from the statement of account by any government accounting officer. *United States v Standard Accident Ins Co,* 280 F2d 445 (CA 1, 1960). It has been applied to find that a language change authorizing solitary imprisonment "for the purpose of discipline" rather than "as a prison discipline for the government and good order of the convicts" did not intend to preclude the use of solitary confinement solely for the purposes expressed in the deleted language: "for the govern-

ment and good order of the convicts". *Kelly v Brewer*, 239 NW2d 109 (Iowa, 1976). It has similarly been applied in many other cases.[12]

The reasons for the presumption regarding changes made in the course of a general revision and compilation of statutes is clear. Major purposes of such revisions are to organize, consolidate, simplify and modernize the language of various statutes pertaining to the same general subject matter without any change in the substantive meaning of the prior laws. The realization of such objectives necessarily requires some alterations in the arrangement and wording of the prior laws. Even where the revision is intended to effect some substantive changes, as was the Revised Judicature Act of 1961, it cannot be presumed that any given change was intended to be substantive rather than stylistic unless such intent has been clearly expressed.

This is particularly true where the revision is as broad in scope as the Revised Judicature Act of 1961, which dealt not only with statutes pertaining to the judiciary but also court rules. The committee report observed:

"Overlapping of the statutes and rules has been

[12] See, *e.g., Davis v Conour,* 178 Colo 376, 382; 497 P2d 1015, 1018 (1972); *Wood County v Board of Vocational, Technical & Adult Education,* 60 Wis 2d 606, 617-618; 211 NW2d 617 (1973); *Fargo v Annexation Review Comm of Cass County,* 148 NW2d 338, 348-349 (ND, 1966); *Mankato Citizens Telephone Co v Comm'r of Taxation,* 275 Minn 107; 145 NW2d 313 (1966); *People v Hobbs,* 35 Ill 2d 263; 220 NE2d 469 (1966); *Town Crier, Inc v Chief of Police of Weston,* 361 Mass 682, 686; 282 NE2d 379 (1972); *Ohio Dep't of Natural Resources v Sellers,* 14 Ohio App 2d 132, 138-139; 237 NE2d 328, 333 (1968); *Jefferson County Teachers Ass'n v Board of Education of Jefferson County,* 463 SW2d 627, 629 (Ky, 1970); *Briggs Drive, Inc v Moorehead,* 103 RI 555; 239 A2d 186 (1968); *Welch v Humphrey,* 200 Md 410; 90 A2d 686 (1952); *Town of Southington v Francis,* 159 Conn 64; 266 A2d 387 (1970); and 1A Sands, Sutherlands' Statutory Construction (4th ed), § 28.10, pp 327-328.

largely eliminated. * * * As a result there are *fourteen hundred fewer statute sections.* This is made possible by the elimination of approximately *nine hundred sections* because special or general provisions of the rules now cover the substance of these sections. *Five hundred other sections* have been consolidated to make the draft statute more clear, or have been dropped because of duplication with other general or special provisions in the statute." Michigan State Bar Joint Committee on Michigan Procedural Revision—Final Report, Part I, Committee Report and Recommendations (1960) ("Committee Report"), p 9, fn 8. (Emphasis supplied.)

When the Legislature is presented with the committee report on a revision of this scope, and where innumerable linguistic changes are intended merely to simplify and modernize without substantive effect, the Legislature cannot possibly give each change the consideration accorded proposed legislation in the ordinary course of legislative procedure.[13]

Given the scope of the revision and the nature of the changes, particular importance attaches to the revisors' comments directed to the Legislature, this Court and the Bar which called attention to and explained the nature of changes made by the revision. Where, as here, the committee comments did not call to the attention of the Legislature what would be, under the majority's construction, a major change in the law but instead said to the Legislature that no change in "time periods" had been made, it is unrealistic to assume that a deletion of language during the revision was intended to work that major change in the law. As

[13] *Briggs Drive, Inc v Moorehead, supra,* p 563. This Court has observed that the scope of codifications requires a somewhat different application of the title/object clause of the constitution (Const 1963, art 4, § 24). *People v Milton,* 393 Mich 234, 247-248; 224 NW2d 266 (1974); *Regents of University of Michigan v Pray,* 264 Mich 693, 697; 251 NW 348 (1933).

mentioned before, the committee comment accompanying § 5805 states, in full: "Section 5805 is a compilation of the limitations on the general tort remedies. Existing time periods have been used." Or, as expressed in *Kambas,* "[s]ection 5805 is nothing more than a compilation of existing limitations with no change in time periods."

It was thus explained to the Legislature, this Court and the Bar that § 5805 merely brought together in one section the various limitations on general tort remedies, without change in the applicable periods of limitation. To find that the section was nonetheless intended to change the time period applicable to actions for the malpractice of lawyers, and perhaps for the malpractice of other professionals, from three years to two years is to infer a change in the law contrary to what was explained to the Legislature.

Where the revision was intended to alter the scope of prior statutes regarding limitations on bringing actions, the committee took care to explain the change. Thus, as to the section on limitations applicable to mortgage foreclosures, the committee comment states:

"Section 5803 is drawn from [1948 CL 609.12] but the second sentence of the statute extends its scope to cover the remedies of foreclosure by publication and other entries under the mortgage as well as foreclosure through the courts."

Similarly, the committee comment to § 5807 states:

"Section 5807 states the periods of limitations relating to contract damage remedies and extends their application to actions for specific performance of contracts."

The committee comment to § 5823 states:

"Section 5823 broadens the scope of [1948 CL 609.27] by including the term 'counterclaim' to the extent of the plaintiff's proved claim."

Each of these changes, all of which the committee considered to merit highlighting and explanation, were accomplished by language changes far more significant and lucid than the deletion of "physicians, surgeons or dentists" from § 5805(3), which in the majority's view reflected a clear and unambiguous intent to effect a major change in the law. In § 5803, an entire sentence was added to effect the change. In § 5807, the phrase "or to enforce the specific performance of any contract" was used to expand the coverage of the section to actions for specific performance. In § 5823, the term "counterclaim" was substituted for "set-off" to broaden the scope of the section.

Since the committee took care to explain even changes which appeared so plainly from the language of the new sections, it would be natural for the Legislature to assume that a change as subtle as that which the majority concludes was made in § 5805(3) would have been highlighted in the comments. It is thus unlikely that the Legislature was even aware of the change in § 5805(3), which, since it involved only the deletion of language, would not have appeared from the new language but only from a comparison to the language of the old section.

The broadening of coverage of § 2912[14] and the committee comments thereon are of special significance. The source section for § 2912 applied only to physicians and surgeons, as the source section

[14] MCL 600.2912; MSA 27A.2912.

for § 5805(3) applied only to physicians, surgeons and dentists, and provided that the rules applicable to actions for malpractice against physicians and surgeons should also be applicable to actions against persons professing or holding themselves out to be physicians or surgeons. 1948 CL 620.29. This section was expanded to cover persons holding themselves out to be "member[s] of a state licensed profession".

Unlike the expansion the majority infers from the changes to § 5805(3), this expansion was clearly detailed in the committee comments to the section:

"The source section pertained only to physicians and surgeons. *Note that the broadening of this section* does not create a new cause of action." (Emphasis supplied.)

Moreover, this expansion of § 2912 was noted in the committee report as a major change from prior statutes. It was the only change in the statutes pertaining to malpractice that was so noted. Under the headings "Major Changes—Statutes", "Actions for malpractice", the committee report refers to § 2912 and states:

"At the present time a loophole exists in the action for malpractice. This has been plugged by providing that the standard of the profession will apply to persons professing to be members of the profession, even though they have not been duly licensed." Committee Report, p 28.

In two separate sections of the Revised Judicature Act of 1961 (§ 2912 and § 5838),[15] statutes

---

[15] MCL 600.2912; MSA 27A.2912; MCL 600.5838; MSA 27A.5838.

pertaining to malpractice were worded to cover professionals in addition to physicians, surgeons and dentists. This Court held in *Kambas,* and the majority in the instant case agrees, that these sections were not intended to alter the definition of "malpractice" in § 5805(3). It is, however, informative to observe that in each of these two sections, where coverage beyond physicians, surgeons and dentists was clearly intended, the revisors did not simply use the word "malpractice", as was done in § 5805(3), but instead used or added language to clarify the intended coverage: "a member of a state licensed profession". Had the revisors intended to similarly expand the applicability of § 5805(3), it is most likely that they would have used similar language.

Surely it is not material whether, as stated by the majority, "[i]n our view, attorneys are deserving of the same protection afforded physicians, surgeons and dentists by the two-year malpractice period of limitations". If it is to be the policy of Michigan to afford attorneys or other professionals the same protection as is afforded members of the medical profession (although not nurses), that policy should be expressed with clarity by the Legislature and not inferred by this Court from an unremarked compression in language during the course of a broad, general revision and consolidation of statutes.

We would adhere to the construction of § 5805(3) indicated in *Kambas:* the applicability of the malpractice limitation was not expanded beyond physicians, surgeons and dentists by the changes in language in the Revised Judicature Act of 1961.

We would reverse and remand for a new trial.

KAVANAGH, J., concurred with LEVIN, J.