# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT F. BROZ and KIMBERLY BROZ,

Plaintiffs-Appellants,

v

PLANTE & MORAN, PLLC,

Defendant-Appellee.

FOR PUBLICATION
December 11, 2018
9:00 a.m.

No. 340381
Otsego Circuit Court
LC No. 12-014346-NM

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

GADOLA, J.

Plaintiffs, Robert F. and Kimberly Broz, appeal as of right the order of the trial court granting summary disposition to defendant, Plante & Moran, PLLC, under MCL 2.116(C)(8) and (10). We affirm.

## I. FACTS

This case involves alleged accounting malpractice. When this case was previously before this Court in *Broz v Plante & Moran, PLLC*, unpublished per curiam opinion of the Court of Appeals, issued May 17, 2016 (Docket No. 325884), we summarized the underlying facts as follows:

> Robert Broz operated several businesses that provide cellular telephone services, including RFB Cellular and Alpine PCS. He organized the businesses as S Corporations, which provided for pass through taxation. The IRS audited the Broz's tax returns and issued a notice of deficiency, or 90-day letter, to them. The IRS listed various deficiencies in the Broz's tax payments for tax years 1996, 1998, 1999, 2000, and 2001. Plante Moran prepared the Broz's tax returns for each of those years. The parties' professional relationship ended in February 2006.

> After the end of the relationship, but before the IRS issued the notice of deficiency, the Broz filed amended tax returns for years 1998-2001, each one designated as a "protective filing" and showing a decrease in adjusted gross

-1-

income of $35,675,453. Having claimed a large net operating loss for tax year 2002, they filed the amended returns in hopes of taking advantage of the 2002 enactment of the Job Creation and Worker Assistance Act, PL 107-147, § 102(a); 116 Stat 21, which allowed taxpayers to carry back net operating losses incurred in tax years 2001 and 2002 for five years instead of the normal two.

The Broz then sued the IRS in the United States Tax Court and disputed the deficiencies; they alleged in relevant part that all but a nominal amount of any tax deficiency assessed as a result of the audit would be eliminated by their 2002 net operating loss carryback. Despite raising the 2002 carryback as an issue in their petition to the Tax Court, the Broz chose not to press that matter as part of their case before that tribunal. Their trial lawyer explained at deposition that this was done for strategic reasons and with the knowledge and approval of Robert Broz.

The Broz sued Plante Moran for malpractice in 2008, but the parties entered into a series of tolling agreements pending the resolution of the case in the United States Tax Court. The Tax Court issued a decision in favor of the IRS on the deficiencies on September 1, 2011, *Broz v Comm'r of Internal Revenue*, 137 TC 46 (U.S. Tax Ct, 2011). The Broz then filed this action on January 19, 2012. They also appealed the decision of the Tax Court to the United States Court of Appeals for the Sixth Circuit. While that appeal was pending, the Broz's lawyer attempted to fight collection efforts by the IRS by asserting that the judgment could be reduced either by a favorable ruling from the Sixth Circuit, or by application of the Broz's 2002 net operating loss carryback, which they were still pursuing with the IRS. The federal appellate court affirmed the judgment of the Tax Court in August 2013. See *Broz v Comm'r of Internal Revenue*, 727 F3d 621 (CA 6, 2013). On September 16, 2014, the IRS sent the Broz a letter disallowing the Broz's carryback claims. The Broz's lawyer responded with a letter stating their disagreement and requesting an appeals conference.

Plante Moran moved for summary disposition of this case on November 5, 2014. It argued that the case must be dismissed because it was not yet ripe; specifically, it stated that the IRS's review process could yet determine that no damages existed. It also argued that, by failing to assert the carryback argument in the United States Tax Court, the Broz caused their own losses. The trial court agreed that the cause of action was not ripe. Although the Broz had been assessed a tax liability, the court explained, they had not suffered any present injury because it was possible that that liability would be offset if they prevailed in their pending action with the IRS. On that basis, the trial court granted Plante Moran's motion for summary disposition under MCR 2.116(C)(4) and dismissed the case without prejudice. [*Broz*, unpub op at 1-2.]

On appeal to this Court in *Broz*, plaintiffs argued that the trial court erred in granting summary disposition to defendant on ripeness grounds. This Court agreed, reversing the decision of the trial court and remanding the case to the trial court for further proceedings. *Broz*, unpub op at 4.

On remand, the parties engaged in additional discovery and defendant again sought summary disposition of plaintiffs' amended complaint, which alleged breach of contract, professional negligence (malpractice), negligent misrepresentation, breach of fiduciary duty, and "estoppel to mitigate and indemnity." The trial court granted defendant's motion, dismissing plaintiffs' claim for professional negligence (malpractice) under MCR 2.116(C)(10), and dismissing all other counts of plaintiffs' complaint under MCR 2.116(C)(8) and (10). Plaintiffs again appeal to this Court.

## II. ANALYSIS

Plaintiffs contend that the trial court erred in granting summary disposition of their claims under MCR 2.116(C)(8) and (10). We review de novo a trial court's decision to grant or deny summary disposition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). In so doing, we review the entire record to determine whether the moving party was entitled to summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review de novo issues of statutory construction. *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007).

A motion for summary disposition under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden*, 461 Mich at 119. A motion for summary disposition under this section is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery. *Id*. By contrast, when reviewing an order granting summary disposition under MCR 2.116(C)(10), this Court considers all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. When a motion is made and supported under MCR 2.116(C)(10), the burden shifts to the nonmoving party to show, by affidavits or other documentary evidence, that there is a genuine issue of material fact. MCR 2.116(G)(4); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the nonmoving party does not make such a showing, summary disposition is properly granted. *Id*. at 363.

### A. PROFESSIONAL NEGLIGENCE (MALPRACTICE)

Plaintiffs first contend that the trial court erred in granting defendant summary disposition under MCR 2.116(C)(10) of plaintiffs' claim of accounting malpractice. We disagree.

### 1. STANDARD OF CARE

Plaintiffs argue that the trial court erroneously imposed upon them a duty to establish the standard of care, and whether defendant met that standard of care, which plaintiffs argue is a burden that is not properly imposed upon a plaintiff bringing a claim of accounting malpractice. Plaintiffs are incorrect in this assertion.

Professional malpractice arises from the breach of a duty owed by one rendering professional services to a person who has contracted for those services. *Saur v Probes*, 190 Mich App 636, 638; 476 NW2d 496 (1991). A professional malpractice claim is a tort claim predicated on the failure of the defendant to exercise the requisite professional skill. *Stewart v Rudner*, 349 Mich 459, 468; 84 NW2d 816 (1957). Accounting is a profession traditionally subject to common-law malpractice liability. *Local 1064, RWDSU AFL-CIO v Ernst & Young*, 449 Mich 322, 333; 535 NW2d 187 (1995).

Members of a state-licensed profession, such as accountants, are subject to liability for malpractice under the rules of the common law as articulated by MCL 600.2912,[1] which provides:

> (1) A civil action for malpractice may be maintained against any person professing or holding himself out to be a member of a state licensed profession. The rules of the common law applicable to actions against members of a state licensed profession, for malpractice, are applicable against any person who holds himself out to be a member of a state licensed profession.

> (2) Malpractice may be given in evidence in defense to any action for services rendered by the member of a state licensed profession, or person holding himself out to be member of a state licensed profession.

Section 2962 of the Revised Judicature Act, MCL 600.2962, sets forth limitations on liability for accounting malpractice. At all times relevant to this action,[2] § 2962 provided:

> This section applies to an action for professional malpractice against a certified public accountant. A certified public accountant is liable for civil damages in connection with public accounting services performed by the certified public accountant *only in 1 of the following situations*:

> (a) A negligent act, omission, decision, or other conduct [of] the certified public accountant if the claimant is the certified public accountant's client.

> (b) An act, omission, decision, or conduct of the certified public accountant that constitutes fraud or an intentional misrepresentation.

---

[1] Our Supreme Court has explained that the purpose of this statute is to ensure that the imposter and the state-licensed professional are both held to the same standard of care. See *Sam v Balardo*, 411 Mich 405, 425-426; 308 NW2d 142 (1981) ("[L]iability for malpractice of members of state-licensed professions is to be determined by resort to the common law. Accordingly, the provisions of the RJA do not purport to create or limit the cause of action of malpractice to something other than what was recognized at common law." (footnotes omitted)).

[2] MCL 600.2962 has since been amended by 2012 PA 268, effective July 3, 2012. The malpractice alleged in this case occurred not later than 2006.

(c) A negligent act, omission, decision, or other conduct of the certified public accountant if the certified public accountant was informed in writing by the client at the time of engagement that a primary intent of the client was for the professional public accounting services to benefit or influence the person bringing the action for civil damages. For purposes of this subdivision, the certified public accountant shall identify in writing to the client each person, generic group, or class description that the certified public accountant intends to have rely on the services. The certified public accountant may be held liable only to each identified person, generic group, or class description. The certified public accountant's written identification shall include each person, generic group, or class description identified by the client as being benefited or influenced. [MCL 600.2962 (emphasis added).]

Generally, to state a claim for malpractice, a plaintiff must allege (1) the existence of a professional relationship, (2) negligence in the performance of the duties within that relationship, (3) proximate cause, and (4) the fact and extent of the client's injury. See *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995) (defining legal malpractice). This Court has also stated that "[a] malpractice claim requires proof of simple negligence based on a breach of a professional standard of care." *Phillips v Mazda Motor Mfg (USA) Corp*, 204 Mich App 401, 409; 516 NW2d 502 (1994), abrogated on other grounds *Ormsby v Capital Welding, Inc*, 471 Mich 45; 684 NW2d 320 (2004); see also MCL 600.2912a. The standard of care refers to what a professional must or must not do. See *Moning v Alfono*, 400 Mich 425, 437-438; 254 NW2d 759 (1977). In that regard, MCL 600.2912a provides:

(1) Subject to subsection (2), in an action alleging malpractice, the plaintiff has the burden of proving that in light of the state of the art existing at the time of the alleged malpractice:

(a) The defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

(b) The defendant, if a specialist, failed to provide the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

(2) In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.

To establish the applicable standard of care, and that the professional breached the standard of care, the plaintiff is usually required to introduce expert testimony, unless the lack of professional care is so obvious as to be within the common knowledge and experience of an ordinary layman. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). When a plaintiff fails to present expert testimony regarding the standard of care, the malpractice claim is subject to dismissal. See *Locke v Pachtman*, 446 Mich 216, 225-226; 521 NW2d 786 (1994) (discussing medical malpractice).

In this case, the trial court found that plaintiffs had failed to present proof of the standard of care and whether defendant had breached that standard of care. Specifically, the trial court found that plaintiffs' expert, Peter Oettinger, did not directly testify or report regarding the standard of care, and concluded that defendant was therefore entitled to summary disposition of plaintiffs' claim of accounting malpractice. Plaintiffs argue that the trial court erred in requiring them to present proof of the standard of care, contending that accounting malpractice claims are governed exclusively by MCL 600.2962, which, plaintiffs argue, does not require a plaintiff alleging accounting malpractice to present proof of the standard of care. Plaintiffs further argue that MCL 600.2912a does not apply to accounting malpractice claims.

When construing a statute, this Court's primary task is to discern and give effect to the intent of the Legislature. *Coldwater v Consumers Energy Co*, 500 Mich 158, 167; 895 NW2d 154 (2017). This Court begins this task by examining the language of the statute as the most reliable evidence of the intent of the Legislature, *id.*, giving the language of the statute its plain and ordinary meaning. *Tomra of North America v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket Nos. 336871, 337663); slip op at 4. If the language is unambiguous, this Court concludes that the Legislature intended the meaning clearly expressed and will enforce the statute as written. *Coldwater*, 500 Mich at 167, citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

The language of MCL 600.2912a(1) does not specifically state that it applies to accounting malpractice. Rather, the statute provides that "in an action alleging malpractice, the plaintiff has the burden of proving" that the defendant "failed to provide the plaintiff the recognized standard of acceptable professional practice or care." Giving this language its plain and ordinary meaning, the statute indicates that the Legislature meant it to apply to "an action alleging malpractice" without exception. MCL 600.2912a therefore imposes upon plaintiffs in this case, who are alleging malpractice, the burden of establishing the recognized standard of acceptable professional practice or care and that defendant failed to meet this standard in providing professional services to plaintiffs.[3]

---

[3] We note that this Court previously has determined that MCL 600.2912a applies to a claim alleging accounting malpractice, albeit in unpublished opinions, which are not precedentially binding, MCR 7.215(C)(1), but may be considered instructive or persuasive. *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 137; 892 NW2d 33 (2016).

To summarize, MCL 600.2912 acknowledges a cause of action against state-licensed professionals, such as accountants, for malpractice under the rules of the common law. MCL 600.2962 sets forth limitations on a cause of action for accounting malpractice.[4] MCL 600.2912a articulates the burden upon a plaintiff in a malpractice case to demonstrate the standard of care and a breach of that standard by the defendant, which applies to malpractice actions without exception. We therefore conclude that MCL 600.2912a imposes upon plaintiffs in this case, who are alleging accounting malpractice, the burden of proving that defendant failed to provide plaintiff with the recognized standard of acceptable professional practice or care, which is consistent with the burden under the common law upon a plaintiff alleging malpractice. The trial court therefore did not err in determining that plaintiffs had the burden of presenting proof regarding the standard of care and whether defendant had breached that standard.

The trial court also did not err in its finding that expert testimony was required in this case to meet that burden. As noted, to establish the standard of care in a malpractice action, and further to establish that the defendant breached that standard of care, the plaintiff is usually required to introduce expert testimony, unless the lack of professional care is so obvious as to be within the common knowledge and experience of an ordinary layman. *Elher*, 499 Mich at 21. In this case, the report of plaintiff's expert details the complex accounting transactions that led to the IRS finding that plaintiffs had tax liability, which plaintiffs argue resulted from defendant's actions. The complexity of the accounting issues involved supports the finding of the need for expert testimony to establish the standard of care and any alleged breach of that standard in this case.

Having concluded that plaintiffs were required to present the opinion of an expert to establish the standard of care and whether defendant breached that standard of care, we consider whether the trial court erred in finding that plaintiffs in this case failed to do so. Plaintiffs' expert, Peter Oettinger, prepared an extensive report detailing the structure of plaintiffs' businesses and how that structure, established by defendant, resulted in plaintiffs incurring tax obligations. Oettinger's report also discussed how the businesses could have been structured differently to avoid the tax liability imposed upon plaintiffs as the result of defendant's work and advice. Oettinger's report, however, does not specify the standard of care, nor does the report specifically state that defendant breached that standard. Rather, the report suggests that other approaches might have been successful, but does not conclude that defendant's conduct rose to the level of malpractice. Oettinger was thereafter deposed by defendant, and testified that he had applied the standard of care issued by the AICPA (American Institute of Certified Public Accountants) in preparing his report.

---

[4] Thus, it is not MCL 600.2962 that is the fountainhead of accounting malpractice, as plaintiffs suggest, but rather MCL 600.2912 and its basis in common law that provides the foundation for the cause of action, with MCL 600.2962 providing certain limitations. Furthermore, the existence of MCL 600.2962 does not abrogate a plaintiff's obligation under MCL 600.2912a to establish a standard of care.

In determining whether Oettinger's report and deposition testimony adequately established the standard of care, the trial court looked for guidance to our Supreme Court's decision in *Locke*, 446 Mich at 225-226. In *Locke*, a case involving alleged medical malpractice, our Supreme Court upheld the trial court's determination that the plaintiff's expert witness had failed to establish a standard of care, and therefore had failed to establish a prima facie case of malpractice. Our Supreme Court stated:

> As the lower courts found, it is indeed questionable whether Dr. Couch's latter testimony on this point was sufficient to establish a standard of care with regard to "incorrect technique." Dr. Couch, while presenting on ways in which needles break, never went so far as to relate that discussion to a standard of care. In effect, she never explained what a reasonably prudent surgeon would do, in keeping with the standards of professional practice, that might not have been done by Dr. Pachtman. Accordingly, the jury would have had no standard against which to measure Dr. Pachtman's conduct. This factor, coupled with the conflicting nature of Dr. Couch's testimony, leads us to believe that the standard of care was not sufficiently established. [*Locke*, 446 Mich at 225.]

In this case, the trial court determined that plaintiffs' expert had failed to state an opinion regarding the standard of care and whether defendant had breached that standard, and that plaintiffs therefore had failed to create an issue of fact regarding their claim of malpractice. Relying upon *Locke*, the trial court reasoned:

> Mr. Oettinger's report does state what "typically" occurs, arguably setting *some* basis for what other accountants might have done that Defendant did not. Further, Mr. Oettinger characterizes the Defendant's actions as "highly questionable." However, like the *Locke* case, these statements do not rise to the level of clearly identifying a standard of care. It is true that Mr. Oettinger stated what typically is done in a timing sense of accounting actions, but he failed to specifically identify what is standard practice or whether the actions and advice the Defendant gave actually breached those professional standards. . . . It is clear from Mr. Oettinger's report that because of Defendant's advice the tax returns resulted in expensive deficiencies. According to Mr. Oettinger the business structure was overly complex and could have been more simple. However, pointing to damages resulting from Defendant's advice does not specifically show the Defendant committed malpractice. Advice from attorneys, doctors, and accountants can be unsatisfactory in that it does not produce the desired results, yet still be within the standard of care. Regardless of Mr. Oettinger's lack of specific language detailing negligence or malpractice, his report does not clearly identify what exactly Defendant *should* have done based on accounting standards of care or how the Defendant's advice breached the standard.

We agree that Oettinger's report does not state the standard of care; although he explained what defendant did wrong and suggests what could have been done instead, he did not specifically identify the standard of care nor did he specifically state that defendant violated the standard of care. And although Oettinger stated in his deposition that he had applied the

standard of care articulated by the AICPA in preparing his report, he did not state what that standard is or whether defendant breached that standard of care.

## 2. OETTINGER'S AFFIDAVIT

After defendant moved for summary disposition, plaintiffs submitted to the trial court an affidavit entitled "Declaration of Peter Oettinger, CPA," attempting to clarify Oettinger's testimony regarding the standard of care. In the affidavit, Oettinger states, in pertinent part:

5. This declaration is made in response to Defendant's suggestion that Defendant has not violated "a duty or standard of care." That statement is false. Defendant has clearly violated their duty to Plaintiffs and did provide bad accounting advice.

6. The tax planning and tax advice provided by Defendant to the Broz' and their companies were wrong. Their bad advice directly resulted in the IRS disallowing millions of dollars of deductions that the Broz' took on their personal returns.

* * *

12. To be crystal clear, my report and my testimony is that Defendant committed accounting malpractice and violated its duties to the Broz'. Whether or not my report used some particular "buzzword," [1] the net effect is the same. Plante & Moran clearly and unequivocally violated its duty of care to Robert and Kimberly Broz.

---

[1] Notwithstanding Defendant's suggestion to the contrary, my report indicates that I used the standard of care as issued by the AICPA. Subsequent research confirms that Michigan has adopted the AICPA standard. (Michigan Department of Licensing and Regulatory Affairs Accountant Rule 338.5102 which states "(1) The following standards are adopted by reference: (a) The standards issued by the American Institute of CPAs (AICPA), 220 Leigh Farm Road, Durham, North Carolina, 27707, set forth in the publication 'AICPA Professional Standards.')

The trial court declined to consider the affidavit, finding it a contradiction of Oettinger's prior testimony. Plaintiffs contend that Oettinger's affidavit was sufficient to clarify his testimony on the standard of care, and that the trial court erred in declining to consider the affidavit. "[A] witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2007). See also *Mitan v Neiman Marcus*, 240 Mich App 679, 683; 613 NW2d 415 (2000) (a party may not contrive a factual issue by asserting the contrary in an affidavit after a deposition). But although a witness is bound by his or her deposition testimony, an affidavit that clarifies or expands upon previous testimony is not prohibited from consideration. See *Wallad v Access BIDCO, Inc*, 236 Mich App 303, 312-313; 600 NW2d 664 (1999).

In this case, the record does not support the trial court's finding that Oettinger's affidavit contradicts his earlier report or deposition testimony. A review of Oettinger's report and deposition testimony demonstrates that the affidavit is consistent with his testimony, and in fact,

-9-

the trial court noted in its opinion that the affidavit *clarified* Oettinger's position that defendants violated their duty to plaintiffs by providing bad advice and by structuring the businesses in a manner that resulted in tax liability to plaintiffs. Because an affidavit that clarifies or expands upon previous testimony is not prohibited from consideration, see *id.*, the trial court was obligated to consider the affidavit. MCR 2.116(G)(5).

We therefore next consider whether the affidavit adequately supplies the missing information regarding the standard of care. In his deposition, Oettinger testified that in writing his report he had applied the standard of care adopted by the AICPA. In his affidavit, he notes that Michigan has adopted the AICPA standards for accountant malpractice, and also explicitly states that defendant violated its duty of care to plaintiffs. But Oettinger's affidavit does not explicitly state the standard of care, nor does it identify what actions by defendant breached that duty. It is not enough to say that defendant violated its duty to plaintiffs or provided bad accounting advice because a professional's bad advice, even combined with a bad result, is not necessarily malpractice. Rather, the expert testimony must establish what the professional's duty is by identifying the relevant standard of care, and then specify what the defendant did or failed to do that violated that standard of care. Thus, although all documentary evidence must be considered in the light most favorable to plaintiffs as the nonmoving party, *Dawoud*, 317 Mich App at 520, here, plaintiffs failed to establish a question of material fact regarding whether defendant breached the standard of care because they failed to present expert testimony on the standard of care and whether defendant breached that standard. The trial court therefore did not err in granting defendant summary disposition of plaintiffs' claim for accounting malpractice.

## B. DISMISSAL OF REMAINING CLAIMS

Plaintiffs next contend that the trial court erred in dismissing plaintiff's remaining claims for breach of contract, negligent misrepresentation, breach of fiduciary duty, and "estoppel to mitigate and indemnity." We disagree.

## 1. BREACH OF CONTRACT

A plaintiff may allege both breach of contract and malpractice in the same action. See *Stewart*, 349 Mich at 468. A contract obligates the parties to do certain acts or provide certain services, and encompasses the duty to perform those acts or services with due care. Malpractice can arise from the breach of that duty of care owed under the contract. *Saur*, 190 Mich App at 638; *Malik v William Beaumont Hosp*, 168 Mich App 159, 168; 423 NW2d 920 (1988). But the duty to meet the standard of care is distinct from the contractual duty to provide services, and as a result a plaintiff can raise both tort and breach of contract claims in one action. A tort claim and contract claim thus may arise from the same transaction, but the two causes of action are separate, with different theories and different proofs. *Stewart*, 349 Mich at 468.

In addition, although a malpractice claim is a tort claim grounded in an allegation of failure to exercise the requisite professional skill, when there is a failure to perform a specific contracted-for action, the cause of action may be one of breach of contract. *Id.* at 468. In the context of legal malpractice, this Court has concluded that an attorney may be held liable under a contract theory if the attorney breached a "special agreement" rather than a general agreement to provide requisite skill or adequate legal services. *Brownell v Garber*, 199 Mich App 519, 524;

503 NW2d 81 (1993). A special agreement is a contract to perform a specific act. *Barnard v Dilley*, 134 Mich App 375, 378; 350 NW2d 887 (1984). When a plaintiff successfully pleads a non-tort cause of action, such as breach of contract, the claim will not be barred simply because the underlying facts may also establish a tort cause of action. *In re Bradley Estate*, 494 Mich 367, 386; 835 NW2d 545 (2013).

In determining whether a claim is based in contract or tort, courts are not bound by the label assigned to the claim by the plaintiff. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 229; 859 NW2d 723 (2014). Rather, a court is required to consider the gravamen of the suit based on the complaint as a whole. *Id.*, citing *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691-692; 822 NW2d 254 (2012). Generally, "a tort requires a wrong independent of a contract." *In re Bradley Estate*, 494 Mich at 383 (quotation marks and citation omitted). "[T]he distinguishing feature of a tort is that it consists in the violation of a right given or neglect of a duty imposed by law, and not by contract." *Id.* (quotation marks and citation omitted).

In this case, the trial court correctly noted that a plaintiff may bring a claim for both malpractice and breach of contract in the same action, but nonetheless dismissed plaintiffs' breach of contract claim, reasoning that the allegations of the complaint asserting malpractice and asserting breach of contract were essentially the same. The trial court reasoned:

> Here, Plaintiffs' complaint is not alleging that the Defendant failed to perform a specific task such as the promise to watch an employee as in *Banker[& Brisebois Co v Maddox*, unpublished per curiam opinion of the Court of Appeals, issued April 29, 2014 (Docket No. 310993). As reflected in *Barnard* [*v Dilley*, 134 Mich App 375; 350 NW2d 887 (1984)] and *Aldred [v O'Hara-Bruce*, 184 Mich App 488; 458 NW2d 671 (1990)], Plaintiffs['] claim here is in essence an allegation that the Defendant's accounting services were inadequate. Labels aside, Plaintiffs' claim for breach of contract is in substance another way of stating their claims for malpractice. Because the Plaintiffs have failed to plead or establish facts that would support a separate claim for breach of contract, the Defendant is entitled to summary disposition on that claim.

The trial court's conclusion is supported by the record. Plaintiffs assert that defendant breached their contract by failing to adequately render the contracted-for professional services, such as setting up their business structure in a tax-advantageous manner. Although a claim for breach of contract will not be barred simply because the underlying facts also establish a tort cause of action, *In re Bradley Estate*, 494 Mich at 386, defendant's alleged failure to properly conduct the work that plaintiffs hired defendant to do is not sufficient to establish a breach of contract claim separate from the malpractice claim. The trial court therefore did not err in granting defendant summary disposition of plaintiffs' breach of contract claim.

## 2. REMAINING CLAIMS

The trial court similarly granted defendant summary disposition under MCR 2.116(C)(8) and (10) of plaintiffs' remaining claims for negligent misrepresentation, breach of fiduciary duty, and "estoppel to mitigate and indemnity." Plaintiffs contend that the trial court erred in doing so

because these causes of action differ from malpractice. While it is true that these causes of action differ from malpractice, plaintiffs' allegations are virtually the same for these claims as for their claim of malpractice, and we discuss them here together.

Regarding negligent misrepresentation and breach of fiduciary duty, a professional may be liable for ordinary negligence as well as for malpractice. See *MacDonald v Barbarotto*, 161 Mich App 542, 549; 411 NW2d 747 (1987). However, a claim arising out of the fiduciary relationship between a professional and the professional's client alleging that the professional failed to adequately provide professional services sounds in malpractice, regardless of the label given to the claim. See *Aldred v O'Hara-Bruce*, 184 Mich App 488, 490; 458 NW2d 671 (1990). This Court has held that a claim for breach of fiduciary duty is not necessarily duplicative of a claim for legal malpractice, but "[t]he conduct required to constitute a breach of fiduciary duty requires a more culpable state of mind than the negligence required for malpractice. Damages may be obtained for a breach of fiduciary duty when a position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *Prentis Family Foundation, Inc v Karmanos Cancer Inst*, 266 Mich App 39, 47; 698 NW2d 900 (2005) (quotation marks and citation omitted).

Regarding plaintiffs' equitable claim entitled "estoppel to mitigate and indemnity," plaintiffs appear to request equitable relief from the trial court, asserting that their damages could have been mitigated if defendant had paid plaintiffs' tax liability when it was assessed against plaintiffs. Again, these allegations have as their basis the contention that defendant poorly performed its professional duties to plaintiffs, causing plaintiffs to incur tax liability.

The trial court dismissed these remaining claims (negligent misrepresentation, breach of fiduciary duty, and estoppel) as redundant, concluding that although these claims had various labels, each of these claims was essentially the same as the claim of malpractice. We agree. Viewing these claims within the context of the entire complaint, each of these three claims has as its gravamen the same actions that comprise defendant's alleged malpractice. In each count of plaintiffs' amended complaint, the action complained of is, essentially, that defendant gave plaintiffs bad advice. Defendant advised plaintiffs that the business structure they were providing for plaintiffs' businesses would result in favorable tax treatment. Defendant was wrong. The IRS disagreed with defendant, resulting in damages and years of litigation for plaintiffs. But because the gravamen of each of these claims is duplicative of the claim for malpractice, the trial court did not err in granting defendant summary disposition of these remaining claims.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Kathleen Jansen

-12-