*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

ROBERT F. BROZ and KIMBERLY BROZ,

        Plaintiffs-Appellants,

v

PLANTE & MORAN, PLLC,

        Defendant-Appellee.

FOR PUBLICATION
January 9, 2020
9:00 a.m.

No. 340381
Otsego Circuit Court
LC No. 12-014346-NM

---

ON REMAND

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

GADOLA, J.

This case involves alleged accounting malpractice. When this case was last before this Court, we affirmed the decision of the trial court granting summary disposition to defendant, Plante & Moran, PLLC, under MCL 2.116(C)(8) and (10). *Broz v Plante & Moran, PLLC*, 326 Mich App 528; 928 NW2d 292 (2018). Thereafter, our Supreme Court considered plaintiffs' application for leave to appeal to that Court and, in lieu of granting leave to appeal, vacated Part II.A. of our opinion and remanded the case to us for reconsideration of the issue of professional negligence (malpractice) in light of *Cox v Flint Bd of Hosp Mgrs*, 467 Mich 1; 651 NW2d 356 (2002). We do so now, and again affirm.

## I. FACTS

This case has a lengthy history and was previously before this Court in *Broz v Plante & Moran, PLLC*, unpublished per curiam opinion of the Court of Appeals, issued May 17, 2016 (Docket No. 325884). In that case, we summarized the underlying facts as follows:

Robert Broz operated several businesses that provide cellular telephone services, including RFB Cellular and Alpine PCS. He organized the businesses as S Corporations, which provided for pass through taxation. The IRS audited the Broz's tax returns and issued a notice of deficiency, or 90-day letter, to them. The IRS listed various deficiencies in the Broz's tax payments for tax years 1996, 1998, 1999, 2000, and 2001. Plante Moran prepared the Broz's tax returns for each of those years. The parties' professional relationship ended in February 2006.

After the end of the relationship, but before the IRS issued the notice of deficiency, the Broz filed amended tax returns for years 1998-2001, each one designated as a "protective filing" and showing a decrease in adjusted gross income of $35,675,453. Having claimed a large net operating loss for tax year 2002, they filed the amended returns in hopes of taking advantage of the 2002 enactment of the Job Creation and Worker Assistance Act, PL 107-147, § 102(a); 116 Stat 21, which allowed taxpayers to carry back net operating losses incurred in tax years 2001 and 2002 for five years instead of the normal two.

The Broz then sued the IRS in the United States Tax Court and disputed the deficiencies; they alleged in relevant part that all but a nominal amount of any tax deficiency assessed as a result of the audit would be eliminated by their 2002 net operating loss carryback. Despite raising the 2002 carryback as an issue in their petition to the Tax Court, the Broz chose not to press that matter as part of their case before that tribunal. Their trial lawyer explained at deposition that this was done for strategic reasons and with the knowledge and approval of Robert Broz.

The Broz sued Plante Moran for malpractice in 2008, but the parties entered into a series of tolling agreements pending the resolution of the case in the United States Tax Court. The Tax Court issued a decision in favor of the IRS on the deficiencies on September 1, 2011, *Broz v Comm'r of Internal Revenue*, 137 TC 46 (U.S. Tax Ct, 2011). The Broz then filed this action on January 19, 2012. They also appealed the decision of the Tax Court to the United States Court of Appeals for the Sixth Circuit. While that appeal was pending, the Broz's lawyer attempted to fight collection efforts by the IRS by asserting that the judgment could be reduced either by a favorable ruling from the Sixth Circuit, or by application of the Broz's 2002 net operating loss carryback, which they were still pursuing with the IRS. The federal appellate court affirmed the judgment of the Tax Court in August 2013. See *Broz v Comm'r of Internal Revenue*, 727 F3d 621 (CA 6, 2013). On September 16, 2014, the IRS sent the Broz a letter disallowing the Broz's carryback claims. The Broz's lawyer responded with a letter stating their disagreement and requesting an appeals conference.

Plante Moran moved for summary disposition of this case on November 5, 2014. It argued that the case must be dismissed because it was not yet ripe; specifically, it stated that the IRS's review process could yet determine that no damages existed. It also argued that, by failing to assert the carryback argument

in the United States Tax Court, the Broz caused their own losses. The trial court agreed that the cause of action was not ripe. Although the Broz had been assessed a tax liability, the court explained, they had not suffered any present injury because it was possible that that liability would be offset if they prevailed in their pending action with the IRS. On that basis, the trial court granted Plante Moran's motion for summary disposition under MCR 2.116(C)(4) and dismissed the case without prejudice. [*Broz*, unpub op at 1-2.]

Plaintiffs, Robert F. and Kimberly Broz, appealed to this Court contending that the trial court erred in granting summary disposition to defendant on ripeness grounds. This Court reversed the decision of the trial court and remanded the case for further proceedings. *Broz*, unpub op at 4. On remand, defendant again sought summary disposition of plaintiffs' amended complaint, which alleged breach of contract, professional negligence (malpractice), negligent misrepresentation, breach of fiduciary duty, and "estoppel to mitigate and indemnity." The trial court granted defendant's motion, and dismissed plaintiffs' claim for professional negligence (malpractice) under MCR 2.116(C)(10), while dismissing all other counts of plaintiffs' complaint under MCR 2.116(C)(8) and (10). Plaintiffs appealed the trial court's order to this Court. We affirmed the decision of the trial court in *Broz*, 326 Mich App 528. Our Supreme Court has now remanded the matter to us for reconsideration of the issue of professional negligence (malpractice).

## II. DISCUSSION

### A. STANDARD OF CARE

When previously before this Court, plaintiffs contended that the trial court erred in granting summary disposition of their claim for professional negligence (malpractice) under MCR 2.116(C)(10). We review de novo a trial court's decision to grant or deny summary disposition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). In so doing, we review the entire record to determine whether the moving party was entitled to summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing an order granting summary disposition under MCR 2.116(C)(10), this Court considers all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. We also review de novo issues of statutory construction. *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007).

In this case, the trial court found that with regard to their malpractice claim plaintiffs had failed to present proof of the standard of care and proof that defendant had breached the standard of care. Specifically, the trial court found that plaintiffs' expert, Peter Oettinger, did not directly testify or report regarding the standard of care. The trial court concluded that defendant was therefore entitled to summary disposition of plaintiffs' claim of accounting malpractice. On appeal to this Court, plaintiffs contended that the trial court erroneously imposed upon them the duty to establish the standard of care. Plaintiffs argued that accounting malpractice claims are governed exclusively by MCL 600.2962, and that that statute does not require a plaintiff alleging

accounting malpractice to present proof of the standard of care nor that the defendant breached that standard. Plaintiffs further argued that although MCL 600.2912a applies to "many professional malpractice claims," it did not apply to accounting malpractice claims.

MCL 600.2912a provides:

(1) Subject to subsection (2), in an action alleging malpractice, the plaintiff has the burden of proving that in light of the state of the art existing at the time of the alleged malpractice:

(a) The defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

(b) The defendant, if a specialist, failed to provide the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

(2) In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.

In *Broz*, 326 Mich App at 540, we noted that the language of MCL 600.2912a(1) does not specifically state that it applies to accounting malpractice, but provides that "in an action alleging malpractice, the plaintiff has the burden of proving" that the defendant "failed to provide the plaintiff the recognized standard of acceptable professional practice or care." Giving this language its plain and ordinary meaning, we observed that the statute indicates that the Legislature meant it to apply to an action alleging malpractice "without exception." *Broz*, 326 Mich App at 540. We therefore concluded that MCL 600.2912a imposed upon plaintiffs in this case the burden of proving that defendant failed to provide plaintiffs with the recognized standard of acceptable professional practice or care.[1] *Broz*, 326 Mich App at 540. We

---

[1] This conclusion is in accord with earlier unpublished opinions of this Court, see e.g. *Banker & Brisebois Co v Maddox*, unpublished per curiam opinion of the Court of Appeals, issued April 29, 2014 (Docket No. 310993), p 8-9 (both MCL 600.2912a and MCL 600.2962 apply in an accounting malpractice case); *Ruby & Assoc, PC v George W. Smith & Co*, unpublished per curiam opinion of the Court of Appeals, issued October 4, 2011 (Docket No. 297266), p 8, lv app den 493 Mich 854 (2012) (to establish accounting malpractice the plaintiff must prove in

further observed that "[m]embers of a state-licensed profession, such as accountants, are subject to liability for malpractice under the rules of the common law as articulated by MCL 600.2912." *Id.* at 536.

In remanding this case to us, our Supreme Court has reminded us of *Cox*, 467 Mich 1, in which the Court held that MCL 600.2912a does not apply to a malpractice action brought against nurses. In *Cox*, the Court explained that the Legislature's use in the statute of the terms "general practitioner" and "specialist," as those terms are ordinarily defined, refer to persons engaged in the practice of medicine and that therefore, for MCL 600.2912a to apply, a person must either be a medical practitioner or engaged in the practice of medicine. *Cox*, 467 Mich at 19. The Court concluded that because nurses do not engage in the practice of medicine, a malpractice action against a nurse does not fall within MCL 600.2912a. *Cox*, 467 Mich at 20. Applying the analysis set forth in *Cox*, we conclude in this case that because accountants, like nurses, are not engaged in the practice of medicine, MCL 600.2912a does not apply to accountant malpractice.

In *Cox*, our Supreme Court concluded that because MCL 600.2912a does not apply to nurses, the common law standard of care applied, stating that "[a]bsent a statutory standard, the common law standard of care applies." Cox, 467 Mich at 5. In *Cox*, the Court observed that there was no action for malpractice against nurses at common law. *Id.* at 20. The Court further observed that although the Legislature had created a malpractice cause of action against nurses by enacting MCL 600.5838a, in doing so the Legislature had not enacted an applicable standard of care. *Id.* Absent a mandated standard of care for nurses in the statute applicable to nursing malpractice, the Court concluded that the common law standard of care applies in malpractice actions against nurses. *Id.* The Court then surveyed cases discussing the standard of care at common law and concluded that under the common law the applicable standard of care for nurses is "the skill and care ordinarily possessed and exercised by practitioners of the profession in the same or similar localities." *Id.* at 20-22. Thus, although neither the statute nor the common law identifies a standard of care for nurses, our Supreme Court did not conclude, as urged by plaintiffs in this case with regard to accountant malpractice, that breach of the standard of care was not a requirement of demonstrating nursing malpractice. Rather, our Supreme Court concluded that the standard of care applicable in other professions at common law also applied to nurses. See *Cox*, 467 Mich at 20-22.

We therefore likewise turn to the common law to ascertain the standard of care applicable to accountants. Accounting is a profession traditionally subject to common-law malpractice liability. *Local 1064, RWDSU AFL-CIO v Ernst & Young*, 449 Mich 322, 333; 535 NW2d 187 (1995). As such, accountants are subject to the common-law principles articulated in malpractice actions generally. See *id.* In addition, as we observed in our previous opinion, as

---

accordance with MCL 600.2912a that the defendant breached the standard of care). Unpublished decisions of this Court are not precedentially binding, MCR 7.215(C)(1), but may be considered instructive or persuasive. *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 137; 892 NW2d 33 (2016).

members of a state-licensed profession, accountants are subject to liability for malpractice under common law in accordance with MCL 600.2912. *Broz*, 326 Mich App at 536. However, we find no published Michigan case identifying the standard of care for accountants at common law. We therefore adopt the conclusion reached by our Supreme Court in *Cox* after examining the standard of care applied in other cases at common law, and adopt the conclusion reached by the Court in *Cox* that at common law the standard of care is "the skill and care ordinarily possessed and exercised by practitioners of the profession in the same or similar localities." [2] *Cox*, 467 Mich at 21-22. Compare *Simko v Blake*, 448 Mich 648, 656; 5321 NW2d 842 (1995) (discussing attorney's common-law standard of care).

Having determined the applicable standard of care, we return to plaintiffs' contention that the trial court erroneously imposed upon them the duty to establish the standard of care in asserting their malpractice claim and to establish that defendant did not meet that standard of care. Plaintiffs contend that accounting malpractice claims are governed exclusively by MCL 600.2962, which does not articulate that proof of the standard of care is required. Plaintiffs argue on remand that therefore, under MCL 600.2962, the only proof required "against an accountant for malpractice is a negligent act." We disagree.

Professional malpractice arises from the breach of a duty owed by one rendering professional services to a person who has contracted for those services. *Saur v Probes*, 190 Mich App 636, 638; 476 NW2d 496 (1991). A professional malpractice claim is a tort claim predicated on the failure of the defendant to exercise the requisite professional skill. *Stewart v Rudner*, 349 Mich 459, 468; 84 NW2d 816 (1957). As noted, accounting is a profession traditionally subject to common-law malpractice liability. *Local 1064*, 449 Mich at 333. In addition, MCL 600.2912 provides that members of a state-licensed profession, such as accountants, are subject to liability for malpractice under the rules of the common law as articulated by that statute. See *Sam v Balardo*, 411 Mich 405, 425-426; 308 NW2d 142 (1981). ("[L]iability for malpractice of members of state-licensed professions is to be determined by resort to the common law. Accordingly, the provisions of the RJA do not purport to create or limit the cause of action of malpractice to something other than what was recognized at common law." *Id*. (footnotes omitted)). MCL 600.2912 provides:

> (1) A civil action for malpractice may be maintained against any person professing or holding himself out to be a member of a state licensed profession. The rules of the common law applicable to actions against members of a state

---

[2] In accord *Midwest Memorial Group LLC v Citigroup Global Markets Inc*, unpublished per curiam opinion of the Court of Appeals, issued September 17, 2015 ) (Docket No 322338), p 4, lv app den 500 Mich 876 (2016), reconsideration den 500 Mich 948 (2017) (a plaintiff alleging accounting malpractice must demonstrate that the accountant failed to satisfy the common law requisite standard of care, which is that an accountant must act with "the same degree of diligence and skill as would an accountant of ordinary learning, judgment or skill, in the same or similar community, under the same or similar circumstances.")

licensed profession, for malpractice, are applicable against any person who holds himself out to be a member of a state licensed profession.

(2) Malpractice may be given in evidence in defense to any action for services rendered by the member of a state licensed profession, or person holding himself out to be a member of a state licensed profession.

MCL 600.2962(1) further clarifies the boundaries of liability for accounting malpractice. At the times relevant to this action,[3] that statute provided in pertinent part:

(1) This section applies to an action for professional malpractice against a certified public accountant. A certified public accountant is liable for civil damages in connection with public accounting services performed by the certified public accountant only in 1 of the following situations:

(a) A negligent act, omission, decision, or other conduct [of] the certified public accountant if the claimant is the certified public accountant's client.

(b) An act, omission, decision, or conduct of the certified public accountant that constitutes fraud or an intentional misrepresentation.

(c) A negligent act, omission, decision, or other conduct of the certified public accountant if the certified public accountant was informed in writing by the client at the time of engagement that a primary intent of the client was for the professional public accounting services to benefit or influence the person bringing the action for civil damages. For purposes of this subdivision, the certified public accountant shall identify in writing to the client each person, generic group, or class description that the certified public accountant intends to have rely on the services. The certified public accountant may be held liable only to each identified person, generic group, or class description. The certified public accountant's written identification shall include each person, generic group, or class description identified by the client as being benefited or influenced.

Neither MCL 600.2912 nor MCL 600.2962 identify a standard of care applicable to accountants in an action alleging malpractice. As discussed, MCL 600.5838a, which created a cause of action for nursing malpractice, similarly does not identify a standard of care applicable to nurses. That being the case, we are guided by our Supreme Court's conclusion in *Cox* that "[a]bsent a statutory standard, the common law standard of care applies." *Cox*, 467 Mich at 5. See also, *Saur*, 190 Mich App at 638 (the standard of care owed to a client in a professional relationship may be imposed by statute, common law, or in accordance with a professional code of responsibility). We therefore hold that plaintiffs were required to demonstrate the standard of

---

[3] MCL 600.2962 has since been amended by 2012 PA 268, effective July 3, 2012. The malpractice alleged in this case occurred not later than 2006.

care and that defendant breached that standard of care to survive summary disposition of their claim of professional negligence (malpractice).

## B. PLAINTIFFS' EXPERT TESTIMONY

Having concluded that plaintiffs were required to demonstrate the standard of care and that defendant breached that standard of care to demonstrate accounting malpractice, we again conclude that plaintiffs failed to do so in this case. Generally, to state a claim for malpractice, a plaintiff must allege (1) the existence of a professional relationship, (2) negligence in the performance of the duties within that relationship, (3) proximate cause, and (4) the fact and extent of the client's injury. See *Simko*, 448 Mich at 655 (defining legal malpractice). This Court has also stated that "[a] malpractice claim requires proof of simple negligence based on a breach of a professional standard of care." *Phillips v Mazda Motor Mfg (USA) Corp*, 204 Mich App 401, 409; 516 NW2d 502 (1994), abrogated on other grounds *Ormsby v Capital Welding, Inc*, 471 Mich 45; 684 NW2d 320 (2004). Thus, the element of negligence encompasses breach of the standard of care. See *Moning v Alfono*, 400 Mich 425, 437-438; 254 NW2d 759 (1977).

To establish the applicable standard of care and that the professional breached the standard of care, the plaintiff usually is required to introduce expert testimony unless the lack of professional care is so obvious as to be within the common knowledge and experience of an ordinary layman. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "Expert testimony is necessary to establish the standard of care because the ordinary layperson is not equipped by common knowledge and experience to judge the skill and competence of the service and determine whether it meets the standard of practice in the community." *Decker v Rochowiak*, 287 Mich App 666, 686; 791 NW2d 507 (2010) (quotation marks and citation omitted). When a plaintiff fails to present expert testimony regarding the standard of care, a malpractice claim is subject to dismissal. See *Locke v Pachtman*, 446 Mich 216, 225-226; 521 NW2d 786 (1994) (discussing medical malpractice). We therefore again conclude that the trial court did not err in its finding that expert testimony was required in this case to meet that burden, given the complex accounting transactions involved. See *Elher*, 499 Mich at 21.

Having so concluded, we also again conclude that the trial court did not err in finding that plaintiffs in this case failed to do so. Plaintiffs' expert, Peter Oettinger, prepared an extensive report detailing the structure of plaintiffs' businesses, how that structure established by defendant resulted in plaintiffs incurring tax obligations, and how the businesses could have been structured differently to avoid the tax liability. Oettinger's report, however, does not set forth the standard of care nor demonstrate that defendant breached that standard.

In determining whether Oettinger's report and deposition testimony adequately established the standard of care, the trial court looked for guidance to our Supreme Court's decision in *Locke*, 446 Mich 216, involving alleged medical malpractice. There, our Supreme Court upheld the trial court's determination that the plaintiff's expert witness had failed to establish a standard of care, and therefore had failed to establish a prima facie case of malpractice. In this case, the trial court similarly determined that plaintiffs' expert failed to state an opinion regarding the standard of care and whether defendant had breached that standard. Relying upon *Locke*, the trial court in this case reasoned:

Mr. Oettinger's report does state what "typically" occurs, arguably setting *some* basis for what other accountants might have done that Defendant did not. Further, Mr. Oettinger characterizes the Defendant's actions as "highly questionable." However, like the *Locke* case, these statements do not rise to the level of clearly identifying a standard of care. It is true that Mr. Oettinger stated what typically is done in a timing sense of accounting actions, but he failed to specifically identify what is standard practice or whether the actions and advice the Defendant gave actually breached those professional standards. . . . It is clear from Mr. Oettinger's report that because of Defendant's advice the tax returns resulted in expensive deficiencies. According to Mr. Oettinger the business structure was overly complex and could have been more simple. However, pointing to damages resulting from Defendant's advice does not specifically show the Defendant committed malpractice. Advice from attorneys, doctors, and accountants can be unsatisfactory in that it does not produce the desired results, yet still be within the standard of care. Regardless of Mr. Oettinger's lack of specific language detailing negligence or malpractice, his report does not clearly identify what exactly Defendant *should* have done based on accounting standards of care or how the Defendant's advice breached the standard.

Again, we agree that Oettinger's report does not identify the standard of care nor specifically state that defendant violated the standard of care. And although Oettinger stated in his deposition that he had applied the standard of care articulated by the AICPA in preparing his report, he did not state what that standard is nor whether defendant breached that standard. We also again conclude that Oettinger's affidavit does not supply the necessary information regarding the standard of care. In our prior opinion, we discussed that after defendant moved for summary disposition, plaintiffs submitted to the trial court an affidavit entitled "Declaration of Peter Oettinger, CPA," attempting to clarify Oettinger's testimony regarding the standard of care. In the affidavit, Oettinger states, in pertinent part:

5. This declaration is made in response to Defendant's suggestion that Defendant has not violated "a duty or standard of care." That statement is false. Defendant has clearly violated their duty to Plaintiffs and did provide bad accounting advice.

6. The tax planning and tax advice provided by Defendant to the Broz' and their companies were wrong. Their bad advice directly resulted in the IRS disallowing millions of dollars of deductions that the Broz' took on their personal returns.

* * *

12. To be crystal clear, my report and my testimony is that Defendant committed accounting malpractice and violated its duties to the Broz'. Whether or not my report used some particular "buzzword," [1] the net effect is the same. Plante & Moran clearly and unequivocally violated its duty of care to Robert and Kimberly Broz.

---

[1] Notwithstanding Defendant's suggestion to the contrary, my report indicates that I used the standard of care as issued by the AICPA. Subsequent research confirms that Michigan has adopted the AICPA standard. (Michigan Department

of Licensing and Regulatory Affairs Accountant Rule 338.5102 which states "(1) The following standards are adopted by reference: (a) The standards issued by the American Institute of CPAs (AICPA), 220 Leigh Farm Road, Durham, North Carolina, 27707, set forth in the publication 'AICPA Professional Standards.')

The trial court declined to consider the affidavit, finding it a contradiction of Oettinger's prior testimony. On appeal to this Court, plaintiffs contended that Oettinger's affidavit was sufficient to clarify his testimony on the standard of care, and that the trial court erred in declining to consider the affidavit. In our previous opinion, we observed that "a witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition." *Broz*, 326 Mich App at 303, quoting *Casey v Auto Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2007). We also observed that although a witness is bound by his or her deposition testimony, an affidavit that clarifies or expands upon previous testimony is not prohibited from consideration. See *Wallad v Access BIDCO, Inc*, 236 Mich App 303, 312-313; 600 NW2d 664 (1999).

In this case, we again conclude that a review of Oettinger's report and deposition testimony demonstrates that the affidavit is consistent with his testimony, and in fact, the trial court noted in its opinion that the affidavit *clarified* Oettinger's testimony. The trial court therefore was obligated to consider the affidavit. MCR 2.116(G)(5). We also again conclude, however, that the affidavit in this case did not establish the standard of care nor the alleged breach of that standard. Stating generally that defendant provided bad accounting advice and that the tax advice was wrong, as Oettinger did in his affidavit, neither states a standard of care nor explains how defendant breached that standard. Likewise, citing generally to a set of standards for accounting adopted by the State of Michigan does nothing to delineate what particular standard defendant might have breached or how defendant might have breached it. Although all documentary evidence must be considered in the light most favorable to plaintiffs as the nonmoving party, *Dawoud*, 317 Mich App at 520, here, plaintiffs failed to establish a question of material fact regarding whether defendant breached the standard of care because they failed to present expert testimony on the standard of care and whether defendant breached that standard. The trial court therefore did not err in granting defendant summary disposition of plaintiffs' claim for accounting malpractice.

Affirmed.


/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Kathleen Jansen