*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF MARGARET GJEBIC.

THERESA GJEBIC, Personal Representative of the
ESTATE OF MARGARET GJEBIC

        Petitioner-Appellee,

v

JOSEPH GJEBIC,

        Respondent-Appellant.

UNPUBLISHED
March 30, 2023

No. 359760
Wayne Probate Court
LC No. 2019-851080-DE

Before: PATEL, P.J., and SWARTZLE and HOOD, JJ.

PER CURIAM.

The decedent, Margaret Gjebic, died in 2019. She was survived by two adult children, Zvonimir "John" Gjebic and Joseph Gjebic. John's wife was appointed as the personal representative of Margaret's estate, and she filed a petition to distribute any remaining assets in the estate to Margaret's heirs. Through the course of litigation, John's wife and Joseph came to a settlement agreement regarding that distribution. Joseph never performed under the settlement agreement, and he contested the agreement's validity. The trial court enforced the settlement agreement, and we affirm.

Margaret's last will and testament left two-thirds of the value of her real property and personal property to Joseph, and the other one-third of the value to John. After signing her will, however, Margaret quitclaimed all of her real property to Joseph. This included a property in Michigan and a property in Ontario. After John's wife filed the petition to distribute the property in the estate, she moved to approve a settlement agreement between her and Joseph. The settlement agreement stated that Joseph would sell his home to pay John a pro rata share for the Michigan property, and he would list the Ontario property and pay John a portion of the proceeds from that sale. The settlement agreement specifically stated that it was distributing the properties "regardless of whether or not such property is/was an estate asset at the time of decedent's death." Additionally, John and Joseph would distribute any personal property as mutually agreed-upon by

-1-

the parties. Lastly, the settlement agreement stated that the parties had signed the agreement, but did not contain any provision requiring the signatures of the parties.

At the hearing to approve the settlement agreement, counsel for John's wife stated on the record that there was a settlement agreement between the parties. The trial court asked Joseph's counsel if that was correct, and she stated, "Yes, it is." It was also stated that Joseph needed additional time to sign the settlement agreement, and his counsel stated that Joseph "may only need a week." The trial court adjourned the matter to give Joseph time to sign the agreement.

After the trial court reconvened the matter, Joseph still had not signed the settlement agreement. Joseph testified that he had ongoing concerns about listing the properties for sale because of the COVID-19 pandemic. The trial court noted that it would give Joseph extra time to list the properties, and the trial court approved the settlement agreement. During the hearing, the trial court asked Joseph if he was going to go through the process of listing the properties and he said, "yes, sir." The trial court also asked Joseph if he had any further questions, to which Joseph responded, "no."

The trial court memorialized the hearing with an order approving the settlement agreement. The order stated that it incorporated the settlement agreement, and the settlement agreement was attached to the order as an exhibit. Joseph's attorney signed the order, and she also signed the settlement agreement "w/ consent."

One year later, however, Joseph had failed to list the properties, and John's wife moved to enforce the settlement agreement. Joseph argued that the settlement agreement was not valid because he did not sign it, there was no consideration, and there was never a final agreement. Under MCR 2.507(G), the trial court held that the settlement agreement was valid because it had been placed on the record in open court and Joseph's attorney subscribed to it.

Joseph moved for reconsideration, and he restated many of the arguments that he provided in opposition to the motion to enforce the settlement agreement. The trial court denied Joseph's motion for reconsideration.

Joseph now appeals.

This Court reviews de novo the existence and interpretation of a settlement agreement because such agreements are governed by the legal principles applicable to the construction of contracts. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). Additionally, this Court reviews de novo the construction and application of the court rules, including whether MCR 2.507(G) would enforce a settlement agreement. *Id*. at 456.

MCR 2.507(G) states:

An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

MCR 2.507(G) was amended in 2006, before which the substantive language was contained in MCR 2.507(H). In *Kloian*, this Court analyzed MCR 2.507(H), specifically whether "subscribed by the party against whom the agreement is offered or by that party's attorney" satisfied the email exchanges that were enforced by the trial court as a settlement agreement. *Kloian*, 273 Mich App at 452. In relevant part, a panel of this Court held:

> "Subscribed" is not defined in MCR 2.507(H). "Subscribe" means "to append, as one's signature, at the bottom of a document or the like; sign." Random House Webster's College Dictionary (2001) (emphasis added).
>
> * * *
>
> However, MCR 2.507(H) does not require a "signature"; it requires a "writing, subscribed " by the party against whom enforcement is sought. MCR 2.507(H) (emphasis added). "Subscribed" is a different word from "signed." Since some statutes of frauds require an agreement "in writing and signed," MCL 566.108 and 566.132, and others require a "writing, subscribed," MCR 2.507(H) and MCL 566.106, we must treat "in writing and signed" differently from a "writing, subscribed." [*Id*. at 459.]

This Court held that "subscribed" required a signature at the bottom of the page, whereas signature could come in different forms that did not have to be attenuated at the bottom of the agreement. *Id*. at 460.

In this case, Joseph's attorney signed the bottom of the trial court's order that enforced the settlement agreement, and she signed the settlement agreement that was attached to the order. Further, Joseph's attorney stated on the record that the agreement had been reached, and Joseph told the trial court that he was going to list the properties for sale. Under MCR 2.507(G) the settlement agreement was subscribed to by Joseph's attorney, it was on the record, and it was enforceable. As this Court has explained, "settlements are favored by the law, and therefore will not be set aside, except for fraud, mutual mistake, or duress." *Clark v Al-Amin*, 309 Mich App 387, 395; 872 NW2d 730 (2015). Joseph has not established fraud, mutual mistake, or duress in the settlement agreement itself. Instead, Joseph complains that his attorney at the time of the settlement agreement made several errors in misrepresenting Joseph's intent to be bound. Any alleged malpractice, however, would not invalidate the settlement agreement. See *Broz v Plante & Moran, PLLC*, 326 Mich App 528, 538-539; 928 NW2d 929 (2018).

Joseph further argues that the trial court erred by enforcing the settlement agreement because it did not have jurisdiction over the properties at issue, the properties were quitclaimed to him and not part of the estate, there was no consideration for the agreement, and he never signed the agreement. These arguments, however, are without merit.

First, the trial court had "exclusive legal and equitable jurisdiction" for "[a] matter that relates to the settlement of a deceased individual's estate…including, but not limited to…the internal affairs of the estate" under MCL 700.1302(a)(1). Enforcing a settlement agreement related to that estate falls within that jurisdiction.

Second, the settlement agreement stated that it was distributing the properties "regardless of whether or not such property is/was an estate asset at the time of decedent's death," and it provided Joseph with the consideration that he could receive more of the personal property than Margaret's will originally intended so long as the parties agreed to that distribution. "[P]arties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003). There is a presumption that the parties understand and intend the language employed in their agreement. *Chestonia Twp v Star Twp*, 266 Mich App 423, 432; 702 NW2d 631 (2005). These provisions were written in the agreement when Joseph said he would list the properties, and when Joseph's attorney attested that the settlement agreement was reached between the parties.

Lastly, MCR 2.507(G) does not require the parties, themselves, to sign the agreement and the agreement does not state that it would be void without the signatures of the parties. Instead, as stated above, Joseph's attorney subscribed to the settlement agreement on the record, and she signed the settlement agreement "w/ consent."

Thus, the trial court did not err when it enforced the valid settlement agreement that was placed on the record under MCR 2.507(G). The trial court also did not abuse its discretion in denying Joseph's motion for reconsideration because there was no palpable error when considering that the trial court did not err in enforcing the settlement agreement. See *Luckow v Luckow*, 291 Mich App 417, 426; 805 NW2d 453 (2011).

Affirmed. Theresa Gjebic, as the personal representative of the estate of Margaret Gjebic and the prevailing party, may tax costs under MCR 7.219.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Noah P. Hood